[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13963

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EUGENE JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20546-KMW-1

_____

Before ROSENBAUM, JILL PRYOR, and ED CARNES, Circuit Judges.

ROSENBAUM, Circuit Judge:

Forewarned is forearmed. That's a common-sense notion that people have recognized for at least hundreds[1] of years. In fact, Shakespeare incorporated it into *Henry VI, Part 3*—written around 1591 or '92—when King Edward IV says, "Well I will arm me, being thus forewarned." William Shakespeare, *King Henry VI, Part 3* act 4 sc. 1, l. 115, Folger Shakespeare Library, edited by Barbara A. Mowat & Paul Werstine (Simon & Schuster Paperbacks Mar. 2009).

The concept of "forewarned is forearmed" also explains why fair notice—a principle enshrined in the Constitution by the Fifth Amendment's Due Process clause—is so important. Knowing that certain conduct violates the law and will result in a specified minimum penalty (or perhaps a maximum penalty), a person may decide to avoid engaging in that conduct. And even if she goes ahead, anyway, and violates the law, she knows in advance what the potential consequences could be.

This due-process cornerstone of fair notice drives our decision today under the Armed Career Criminal Act ("ACCA").

---

[1] Ancient Romans apparently identified the principle thousands of years ago. "*Praemonitus, praemunitus*" is a Latin proverb that translates loosely to "forewarned, forearmed." The Phrase Finder, https://www.phrases.org.uk/meanings/forewarned-is-forearmed.html (last visited June 9, 2022).

ACCA increases the sentence of, among others, a felon in unlawful possession of a firearm if that person has at least three prior convictions for a "violent felony," 18 U.S.C. § 924(e)(2)(B), or a "serious drug offense," 18 U.S.C. § 924(e)(2)(A), or both.  This appeal requires us to decide which version of the Controlled Substance Act Schedules incorporated into ACCA's definition of "serious drug offense" applies when a defendant is convicted of being a felon in possession of a firearm:  the version in effect at the time of the defendant's federal firearm-possession violation (for which he is being sentenced), or the ones in effect when he was convicted of his predicate state crimes that we are evaluating to see whether they satisfy ACCA's definition of "serious drug offense."

We hold that due-process fair-notice considerations require us to apply the version of the Controlled Substance Act Schedules in place when the defendant committed the federal firearm-possession offense for which he is being sentenced.  When we apply that iteration here, we conclude that Defendant-Appellant Eugene Jackson does not qualify for ACCA's sentence enhancement.  Because the district court reached the opposite conclusion, we vacate Jackson's sentence and remand for resentencing.

I.

Jackson pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  According to the factual proffer supporting Jackson's guilty plea, he unlawfully possessed the firearm on September 26, 2017.

In Jackson's presentence investigation report ("PSI"), the probation officer determined that Jackson's prior criminal history qualified him for an ACCA sentencing enhancement. ACCA applies to a conviction under 18 U.S.C. § 922(g) for firearm possession by a prohibited person if the defendant has three qualifying convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In support of the ACCA enhancement the probation officer recommended for Jackson, the PSI concluded Jackson had five qualifying predicate convictions:

> (1) a 1998 Florida conviction for battery on a law enforcement officer;
>
> (2) a 1998 Florida conviction for the sale of cocaine;
>
> (3) a 2003 Florida conviction for armed robbery;
>
> (4) a 2004 Florida conviction for possession with intent to sell cocaine; and
>
> (5) 2012 Florida convictions for aggravated assault with a deadly weapon and aggravated battery with a deadly weapon, each arising out of the same incident.

The recommended ACCA enhancement increased Jackson's total offense level from 23 to 30, which caused his advisory guideline range to change from 92–115 months to 180–210 months.

Jackson objected to the probation officer's determination that ACCA applied. He conceded that he had two ACCA

predicates:  the 2003 Florida armed robbery and the 2012 aggra-vated battery.[2] (Jackson disputed that the 2012 aggravated assault qualified as a "violent felony" but admitted that the accompanying aggravated battery did.)

But Jackson argued that neither of his cocaine-related con-victions qualified as a third ACCA predicate offense.  He acknowl-edged that "serious drug offense" means, as relevant here, "an of-fense under State law, involving . . . distributing, or possessing with intent to . . . distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is pre-scribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  But Jackson con-tended that the cocaine-related conduct that Fla. Stat. § 893.13 pro-hibited when both of Jackson's cocaine-related convictions oc-curred encompassed, among other things, the sale of, or possession with intent to distribute, ioflupane ($^{123}$I) ("ioflupane").  Yet when Jackson possessed the firearm here, ioflupane was not a "controlled substance" for purposes of the "serious drug offense" definition in § 924(e)(2)(A)(ii).  So Jackson urged that, categorically, a cocaine-related offense under Fla. Stat. § 893.13 at the times of his cocaine-

---

[2] As relevant here, these offenses qualified as "violent felon[ies]" because they each were a felony that "has as an element the use, attempted use, or threat-ened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).

related convictions could not qualify as a "serious drug offense" under ACCA.

For its part, the government conceded that Jackson's 1998 Florida battery conviction did not qualify as an ACCA predicate. It also agreed that the 2012 aggravated assault and aggravated battery counted as only a single "violent felony." As to the cocaine-related § 893.13 offenses, the government did not address Jackson's ioflupane argument on the merits. Instead, it argued that Jackson's convictions necessarily are "serious drug offenses" under our decision in *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014), and the Supreme Court's decision in *Shular v. United States*, 140 S. Ct. 779 (2020).

Jackson disagreed.

Ultimately, the district court agreed with the government. Based on that conclusion, it sentenced Jackson to ACCA's mandated fifteen-year minimum.

Jackson now appeals.

## II.

We review de novo whether a state conviction qualifies as a "serious drug offense" for ACCA purposes. *United States v. Conage*, 976 F.3d 1244, 1249 (11th Cir. 2020). When conducting our review, we are "bound by federal law when we interpret terms in the ACCA" and "bound by state law when we interpret elements of state-law crimes." *Id.* (internal quotation marks omitted).

### III.

As we have noted, this case requires us to determine whether Jackson's 1998 and 2004 cocaine-related drug convictions qualify as "serious drug offense[s]" for purposes of ACCA. To accomplish that task, we employ the "categorical approach." *Conage*, 976 F.3d at 1250. Under that approach, we look to the state offense of which the defendant was previously convicted and identify the elements of that crime. *Id.* The categorical approach requires that we do not consider the individual facts underlying the defendant's prior conviction—just the elements. *Id.* We then compare these elements of the state offense with the components of ACCA's definition of "serious drug offense." *See id.* A conviction qualifies as a "serious drug offense" only if the state statute under which the defendant was convicted defines the offense as least as narrowly as ACCA's definition of "serious drug offense." *Id.*

In conducting our analysis here, we proceed in three steps. First, we identify the criteria that ACCA uses to define a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii). Second, we analyze the outer bounds of the elements that would have satisfied Fla. Stat. § 893.13's requirements for a cocaine-related conviction at the time of each of Jackson's convictions. And third, we compare the results of the first two steps to see whether § 893.13's "elements 'necessarily entail one of the types of conduct'" set forth in ACCA's definition of "serious drug offense." *Shular v. United States*, 140 S. Ct. 779, 784 (2020) (emphasis and citation omitted). If so, we count the conviction as a "serious drug offense." But if not, the

conviction does not qualify as a "serious drug offense." Finally, after we conduct our analysis, we explain why the precedent on which the government relies does not alter our conclusion.

A. **As relevant here, § 924(e)(2)(A)(ii)'s definition of "serious drug offense" requires satisfaction of three criteria: (1) the state offense must involve distributing, or possessing with intent to distribute (2) "cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the[se] substances," but not ioflupane; and (3) the state offense must have been punishable by a maximum term of imprisonment of at least ten years.**

1. *The Controlled Substance Act Schedules that were incorporated into ACCA's § 924(e)(2)(A)(ii) definition of "serious drug offense" as of the time Jackson committed his federal-firearm-possession violation are the ones that govern.*

Before we can determine what ACCA's § 924(e)(2)(A)(ii) definition of "serious drug offense" "necessarily require[s]," we must first decide the version of the statute we must consult: the one in effect at the times of Jackson's cocaine-related convictions, the one in effect at the time of Jackson's firearm possession for which he is being sentenced, or some other version. We conclude that due-process considerations require us to use the iteration of the Controlled Substances Act Schedules incorporated into §

924(e)(2)(A)(ii)'s definition of "serious drug offense" in effect when Jackson possessed the firearm that undergirds his federal conviction pending before us.

Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[C]onsonant . . . with ordinary notions of fair play and the settled rules of law," due process contemplates criminal laws that "give ordinary people fair notice of the conduct [they] punish[]." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citation and quotation marks omitted). Fair notice allows "the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). It also ensures uniformity of enforcement by police and courts. *See Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966). And if an individual decides to break the law, anyway, the fair notice that due process requires advises him of the maximum (and depending on the statute, minimum) statutory penalty he can expect, so he knows what he risks before he undertakes his crime. *See Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir. 1989). After all, forewarned is forearmed.

To be sure, the Supreme Court has emphasized these principles in cases with vague statutes that did not clearly identify the conduct that violated them or the potential sentence upon conviction. *See, e.g.*, *Johnson*, 576 U.S. at 593. But these concepts apply with at least as much force when a statute does unambiguously delineate the conduct that violates it, and the defendant's conduct does not satisfy that standard.

If they did not, an ordinary person would receive *no notice* (let alone vague notice) that her conduct that falls outside the statute's parameters brings potential criminal consequences. And police and courts would be free to punish individuals for conduct that the law does not criminalize. That type of situation would do violence to the interests of "fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws" that due process protects. *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001); *see also Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (noting that due-process concerns require "statutes fixing sentences" to "specify the range of available sentences with 'sufficient clarity'") (citations omitted).

Given these interests, the form of the Controlled Substances Act Schedules incorporated into § 924(e)(2)(A)(ii)'s definition of "serious drug offense" that was in place on September 26, 2017, when Jackson possessed the firearm here, must govern. That way, Jackson had notice at the time of his firearm-possession offense not only that his conduct violated federal law, but also of his potential minimum and maximum penalty for his violation and whether his prior felony convictions could affect those penalties.

> 2. *The Controlled Substance Act Schedules that were incorporated into § 924(e)(2)(A)(ii) as of the time Jackson possessed the firearm here necessarily required a "serious [cocaine-related] drug offense" not to have involved ioflupane.*

As relevant here, ACCA defines a "serious drug offense" as "an offense under State law, involving . . . distributing, or possessing with intent to . . . distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). This definition requires a state crime to meet three criteria: (1) the offense under state law must "involve[e] . . . distributing, or possessing with intent to . . . distribute" (2) "a controlled substance (as defined in section 102 of the Controlled Substances Act . . .)", (3) and the state offense must be punishable by a maximum term of imprisonment of at least ten years. *Id.*

The Supreme Court has already clarified the meaning of the first element. In *Shular*, the Court explained that "involving . . . distributing, or possessing with intent to . . . distribute" refers to "conduct" that the definition "necessarily require[s]." 140 S. Ct. at 785 (alteration omitted). And the third element—concerning the potential penalty for the offense of the prior conviction—is self-explanatory.

That leaves us with the second element: "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." 18 U.S.C. § 924(e)(2)(A)(ii). Section 102, in turn, defines a "controlled substance" to "mean[ ] a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). For its part, on September 26, 2017 (and currently), Schedule II included

the following cocaine-related substances: "cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812(c), Schedule II(a)(4). But it did not include ioflupane.

Schedule II once included ioflupane (indeed, it did at the times Jackson was convicted of his two cocaine-related prior offenses). When that was the state of affairs, ioflupane was "by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54715.

But it turns out that ioflupane has value in potentially diagnosing Parkinson's Disease. *See id.* at 54716–17. So in September 2015, under 21 U.S.C. § 811[3], the United States Attorney General "remove[d] the regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances, including

---

[3] Section 811(a)(2) authorizes the Attorney General to "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule." *See also* 21 U.S.C. § 812(c), Schedule II(a) (listing controlled substances "[u]nless specifically excepted"); *id.* § 812 Note ("For updated and republished schedules of controlled substances established by this section, see Code of Federal Regulations, Part 1308 of Title 21, Food and Drugs.").

those specific to schedule II controlled substances, on persons who handle or propose to handle [($^{123}$ I)] ioflupane." *Id.* at 54716. Since then, ioflupane has not been included on any federal drug Schedule. *See* 21 C.F.R. § 1308.12(b)(4)(ii) (2021) ("except[ing]" ioflupane from current Schedule II).

As a result, ioflupane has not been a federally "controlled substance," as defined in 21 U.S.C. § 802, since September 2015. And consequently, also since that time, a cocaine-related offense that involved only ioflupane has not involved a federally "controlled substance" for purposes of § 924(e)(2)(A)(ii).

B.  **At the times of Jackson's cocaine-related prior offenses for which he sustained convictions under Fla. Stat. § 893.13, the cocaine-related activity § 893.13 criminalized categorically included activity involving ioflupane.**

Having identified the components of a "serious drug offense," we next consider the elements of Jackson's prior state cocaine-related offenses under Fla. Stat. § 893.13. When we examine prior state convictions under the categorical approach, we analyze "the version of state law that the defendant was actually convicted of violating." *McNeill v. United States*, 563 U.S. 816, 821 (2011). That is so because § 924(e)(2)(A)(ii)'s definition of "serious drug offense" refers to the term "previous conviction[]" in ACCA's § 924(e)(1) enhancement language. *See* 18 U.S.C. § 924(e)(1) (applying the enhancement to those "who violate[] section 922(g) of this title and ha[ve] three *previous convictions* . . . for . . . a serious drug offense, . . . committed on occasions different from one another")

(emphasis added).  And "previous conviction[]" is a "backward-looking" term that requires us "to consult the law that applied at the time of that conviction." *McNeill*, 563 U.S. at 820.

That settled, we preface our review of the elements of the Jackson's state cocaine-related convictions with a brief discussion of the distinction between the elements of a crime and the means of committing a single element. *See Mathis v. United States*, 579 U.S. 500, 504–05 (2016).  The Supreme Court has explained that "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 504.  Alternative means, on the other hand, are different ways to satisfy a single element. *See id.* at 505.

When a statute lists alternative "elements," rather than alternative "means" of satisfying an element, the statute is "divisible." *See id.*  In that case, the "modified categorical approach" permits a court to consult a limited class of documents for the sole purpose of ascertaining the elements on which the defendant was actually convicted. *Id.*  These documents include a plea agreement, the transcript of a plea colloquy, the charging document, jury instructions, or a "comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

But when a statute lists alternative means of satisfying a single element, the standard categorical approach governs. *Mathis*, 579 U.S. at 517.  So we must consider all listed means of satisfying the elements of the state offense to be able to compare that covered

conduct at the third step of our analysis to ACCA's definition of "serious drug offense."

With this understanding in mind, we turn to the elements of Fla. Stat. § 893.13 at the times of Jackson's convictions. In 1998 and 2004, § 893.13(1)(a) prohibited, as relevant here, the sale of or possession with intent to sell a "controlled substance," as defined in Schedules I through V, Fla. Stat. § 893.02(4). The only element of that crime in question is the meaning of "controlled substance."[4]

In *Guillen v. U.S. Attorney General*, 910 F.3d 1174 (11th Cir. 2018), we held that, under Florida law, each category of substance separately enumerated in Florida's Controlled Substance Schedules was an alternative controlled-substance "element." *See id.* at 1182–83. So for example, sale of marijuana and sale of heroin were different crimes. *See id.*

In contrast, we explained, when a drug schedule identified different formulations of the same category of substance, the alternatives were different "means" of satisfying a particular "controlled substance" element. *See id.* Take the example we pointed to in *Guillen*: Florida courts have held that possession of marijuana is the same crime as possession of hashish, since "marijuana and

---

[4] The Supreme Court has discussed other elements of § 893.13(1)(a), but they are not relevant here. *See Shular*, 140 S. Ct. at 784 (noting that under Section 893.13(1)(a), "'knowledge of the illicit nature of a controlled substance is not an element,' but lack of such knowledge 'is an affirmative defense'") (quoting Fla. Stat. § 893.101(2)).

hashish were defined as the same controlled substance under Florida law" in that both fell under the definition of "cannabis." *Id.* at 1183 (citing *Retherford v. State*, 386 So. 2d 881, 882 (Fla. 1st DCA 1980)).

*Guillen* establishes that the enumerated categories of "controlled substances" in Florida's drug Schedules are alternative "elements." For that reason, we may consult *Shepard* documents to identify the "controlled substance" element for which Jackson was convicted. The criminal information submitted in the district court shows that his offenses related to "cocaine."

When Jackson was convicted of his cocaine-related offenses, § 893.03(2)(a)(4) set forth the formulations encompassed within the category of cocaine, according to Florida's Schedule II: "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." That description also included ioflupane.

We know this because of Florida's actions after the United States exempted ioflupane from the federal Schedule II. As of July 1, 2017, Florida followed suit and expressly exempted ioflupane from its Schedule II. 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505).

Since that time, Florida's Schedule II has included "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine, *except that these substances shall not include ioflupane I 123*." Fla.

Stat. § 893.03(2)(a)(4) (2017) (emphasis added).  This amended version of the statute expressly excepts ioflupane from qualifying as a Schedule II substance even though it implicitly acknowledges that ioflupane otherwise qualifies as "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine."  So the amendment confirms that, before the addition of the emphasized phrase—when Jackson committed his § 893.13 offenses—Florida law criminalized sale and possession of ioflupane as a part of its prohibition on the sale and possession of "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine."  Fla. Stat. § 893.03(2)(a)(4).

Because § 893.03(2)(a)(4) identified "means," not "elements," in 1998 and 2004, when Jackson was convicted under § 893.13(a)(1), a cocaine-related conviction could have been based on any one of these several formulations, including sale of or possession with intent to distribute ioflupane.

C. **At the times of Jackson's prior cocaine-related state convictions, Fla. Stat. § 893.13(a)(1)'s controlled-substance element was broader for cocaine-related offenses than ACCA's "serious drug offense" definition, so Jackson's 1998 and 2004 cocaine-related convictions do not qualify as "serious drug offense[s]."**

We've sifted through ACCA's definition of "serious drug offense" at the time Jackson unlawfully possessed the firearm for which he was convicted here.  We've also sorted out the breadth

of Fla. Stat. § 893.13(1)(a) at the times of Jackson's cocaine-related convictions. Now, we must compare the two to see whether Jackson's prior cocaine-related convictions qualify as "serious drug offense[s]" under ACCA.

Everyone agrees that Jackson's 1998 and 2004 § 893.13 cocaine-related convictions satisfy the first and third criteria of a "serious drug offense": they involve sale or possession with intent to distribute, and they are punishable by at least ten years' imprisonment. So we turn to the second criterion: whether Jackson's convictions involved a "controlled substance."

Because we apply the categorical approach in conducting this comparison, we must presume that Jackson's cocaine-related convictions "rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021) (internal quotation marks omitted). Here, that means we must assume that Jackson sold and possessed with intent to sell ioflupane. But as we have explained, on September 26, 2017—when Jackson possessed the firearm here—the federal Schedule II expressly excluded ioflupane as a cocaine-related controlled substance. Because ioflupane was not a "controlled substance" under federal law when Jackson committed his § 922(g) firearm-possession offense, his state offenses did not "necessarily entail" the conduct set out in ACCA's "serious drug offense" definition. *See Shular*, 140 S. Ct. at 784. As a result, Jackson's cocaine-related prior convictions do not qualify under ACCA as "serious drug offense[s]."

D. **The two *Smith* cases, *Shular*, and *McNeill* do not require the conclusion that Jackson's prior cocaine-related convictions qualify as "serious drug offense[s]."**

The government argues that *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014) ("*Smith 2014*"), *United States v. Smith*, 983 F.3d 1213 (11th Cir. 2020) ("*Smith 2020*"), and *Shular*, 140 S. Ct. 779, require the conclusion that Jackson's prior cocaine-related convictions qualify as "serious drug offense[s]." We disagree.

We start with the two *Smith* cases and *Shular*. As relevant here, in *Smith 2014*, we considered whether Fla. Stat. § 893.13(1) was a "serious drug offense" under ACCA's § 924(e)(2)(A)(ii), given that § 893.13(1) included no mens rea element on the illicit nature of the controlled substance. *See Smith 2014*, 775 F.3d at 1268. We concluded it was. A few years later, in *Shular*, the Supreme Court agreed. *See Shular*, 140 S. Ct. at 784–85. It explained that, when evaluating whether a state offense qualifies as a "serious drug offense," we "should ask whether the state offense's elements 'necessarily entail one of the types of conduct' identified in § 924(e)(2)(A)(ii)." *Id.* at 784 (emphasis omitted). Later in 2020, the same issue came before us again. Relying on *Shular* (and *Smith 2014*), we confirmed that Fla. Stat. § 893.13(1)'s lack of a mens rea element does not prevent it from qualifying as a "serious drug offense." *Smith 2020*, 983 F.3d at 1223.

The government argues that the two *Smith* cases bind us under the prior-panel-precedent rule (and *Shular* binds us as Supreme Court precedent) to conclude that any conviction—

including Jackson's 1998 and 2004 ones—under § 893.13(1) satisfies the definition of "serious drug offense" in § 924(e)(2)(A)(ii). Not so.

Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." In re Lambrix, 776 F.3d 789, 794 (11th Cir. 2015). True, we have "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." Id. But "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U.S. 507, 511 (1925).

The question of which version of the Controlled Substance Act's drug Schedules governs under § 924(e)(2)(A)(ii)'s definition of "serious drug offense" was not even a twinkle in our eyes or in those of the Supreme Court in the Smith cases and in Shular. Rather, in those three cases, the issue was whether Fla. Stat. § 893.13(1)'s lack of a mens rea element precluded it from qualifying as a "serious drug offense." At most, the Smith panels and the Supreme Court in Shular implicitly assumed all the other criteria to satisfy the federal definition of "serious drug offense" were met. But "assumptions are not holdings, Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1239 (11th Cir. 2016). Indeed, the Supreme Court has recognized that where it has "never squarely addressed [an] issue, and ha[d] at most assumed [the issue], [it is] free to address the issue on the merits" in a later case presenting it.

*Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("The effect of the omission was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not a binding precedent on this point.") (footnote omitted). Our sister circuits adhere to this principle as well. *See, e.g.*, *Fernandez v. Keisler*, 502 F.3d 337, 343 (4th Cir. 2007) ("We are bound by holdings, not unwritten assumptions."); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("In those cases, this court simply assumed that the commerce clause applied, but the issue was never raised or discussed. Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *United States v. Norris*, 486 F.3d 1045, 1054 (8th Cir. 2007) (en banc) (Colloton, J., concurring in the judgment) (citing cases finding that *sub silentio* holdings, unstated assumptions, and implicit rejections of arguments by prior panel are not binding circuit precedent).

Here, to the extent that *Shular* and *Smith 2020* bind us to reach any conclusion, it's that Jackson's 1998 and 2004 § 893.13(1) cocaine-related convictions cannot qualify as "serious drug offense[s]" under § 924(e)(2)(A)(ii). That is so because *Shular* holds that we "should ask whether the state offense's elements 'necessarily entail one of the types of conduct' identified in § 924(e)(2)(A)(ii)" to determine whether the state offense meets the definition of "serious drug offense." 140 S. Ct. at 784 (emphasis omitted). And conduct involving the sale of or possession with

intent to distribute cocaine-related substances under §
924(e)(2)(A)(ii) does not include conduct involving the sale of or
possession with intent to distribute ioflupane.

As for *McNeill*, there, as we have mentioned, the Supreme
Court held that, in evaluating whether a prior state conviction
qualifies as a "serious drug offense" under § 924(e)(2)(A)(ii), we
must consider the offense under state law as it existed at the time
of that prior state conviction, not later.  563 U.S. at 820.  The Court
grounded its analysis in the "previous convictions" language in §
924(e), which necessarily asks a "backward-looking question."  *Id.*

But here, we are considering the *federal standard* to which
we compare the answer to *McNeill*'s "backward-looking question"
of what the defendant's "previous [state] conviction[]" was.  And
that federal standard comes into play only because of the federal
firearm-possession violation to which it is attached—a violation
that occurred after the "previous conviction[]."  Our question was
not before the Court in *McNeill.*  And *McNeill*'s reasoning, which
relied on the language "previous convictions," has no application
here.  As the First Circuit has explained, though *McNeill* holds that
"the elements of the state offense of conviction are locked in at the
time of that conviction," it does "not also hold that ACCA's own
criteria for deeming a 'previous conviction[]' with those locked-in
characteristics to be a 'serious drug offense,' [a]re themselves also
locked in as of the time of the 'previous conviction[].'"  *United
States v. Abdulaziz*, 998 F.3d 519, 525–26 (1st Cir. 2021) (citations
and quotation marks omitted); *see also United States v. Bautista*,

989 F.3d 698, 703 (9th Cir. 2021) ("*McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code."); *United States v. Hope*, 28 F.4th 487, 505 (4th Cir. 2022) ("*McNeill* does not prohibit us from considering changes to federal law for the purposes of the ACCA.").

In short, no prior precedent precludes our ruling today.

## IV.

Because Jackson's cocaine-related § 893.13 offenses do not qualify as "serious drug offenses" under ACCA, we vacate Jackson's sentence and remand to the district court for sentencing without the ACCA enhancement.

**VACATED and REMANDED.**