RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

JAMES CLARK, III,

        *Defendant-Appellant*.

No. 21-6038

─────────────

Appeal from the United States District Court for the Western District of Tennessee at Jackson.
No. 1:19-cr-10027-1—S. Thomas Anderson, Chief District Judge.

Argued: June 15, 2022

Decided and Filed: August 18, 2022

Before: GIBBONS, COOK, and THAPAR, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

COOK, J., delivered the opinion of the court in which GIBBONS and THAPAR, JJ., joined. THAPAR, J. (pg. 16), delivered a separate concurring opinion.

─────────────

## OPINION

─────────────

COOK, Circuit Judge. Defendant James Clark, III pled guilty to a drug crime in federal court. He received an enhanced sentence because he was designated a career offender under the

Sentencing Guidelines based on prior marijuana convictions. Section 4B1.1 of the Guidelines states that a defendant is a career offender if, among other criteria, he has committed at least two prior felonies for a crime of violence or a "controlled substance offense." In the time between Clark's previous drug crimes and the current one, Tennessee and the federal government amended their respective drug schedules to narrow the definition of marijuana by excluding hemp. Based on this narrowed definition, Clark contests his career offender designation. He argues that his prior marijuana offenses are not categorically controlled substance offenses because hemp no longer qualifies as marijuana, and therefore, because his prior marijuana offenses could have been for hemp, those prior convictions cannot count as "controlled substance offenses" under § 4B1.1. Thus, this appeal asks us to decide whether the Guidelines' use of the term "controlled substance" in the career offender enhancement should be defined with reference to the drug schedules in place at the time of the prior convictions at issue, or the schedules in effect at the time of sentencing on the current federal offense. We hold that the proper reference is the law in place at the time of the prior convictions.

## I.

In 2019, law enforcement officers arrested Clark for obtaining and distributing controlled substances, including cocaine and heroin, and for selling heroin to undercover agents on three occasions. A grand jury indicted Clark for (1) conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of heroin, fentanyl, and cocaine in violation of 21 U.S.C. §§ 841(a) and 846, and (2) possession with intent to distribute those mixtures in violation of 21 U.S.C. § 841(a).

This was not Clark's first encounter with the law. He committed various felonies in the past, and those included two Tennessee convictions for possessing marijuana with the intent to sell or deliver. Those previous convictions had the potential to extend Clark's sentence for his most recent drug offense under the Sentencing Guidelines' career offender enhancement. The Guidelines provide that defendants qualify as career offenders if (1) they are at least eighteen years old when they committed the instant offense; (2) the instant offense is a felony crime of violence or felony controlled substance offense; and—most important for today's purposes—

(3) they have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

Clark pled guilty to the possession count of his instant offense, reserving the right to appeal the court's decision on whether his prior Tennessee marijuana convictions are controlled substance offenses qualifying him as a career offender under the Guidelines. The government agreed not to seek an aggravating role enhancement, and the parties agreed that Clark should be held accountable for a drug weight of 333 kilograms, resulting in a base offense level of 24. The Presentence Report (PSR) calculated Clark's total offense level at 29, taking into account his career offender status, among other factors. Clark's criminal history score placed him in Category V, but his career offender status raised him to Category VI. The Guidelines range was 151–188 months.

Clark objected to his career offender designation, both in a written response to the PSR and at the sentencing hearing. Critical to his objection, in December 2018, prior to Clark's arrest in the instant case, Congress passed the Agriculture Improvement Act (commonly known as the Farm Bill), which narrowed the federal definition of marijuana to exclude hemp. 21 U.S.C. § 802(16). Hemp is "the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1). Tennessee narrowed its definition in a similar fashion a few months later. Tenn. Code. Ann. §§ 39-17-402(16)(C), 43-27-101(3). Clark argued that he did not qualify as a career offender because both the state and federal governments had revised their drug schedules to exclude hemp from the definition of marijuana in the time since his prior convictions, so those convictions are not categorically controlled substance offenses.

The district court overruled Clark's objections, concluding that his prior marijuana convictions qualified him as a career offender. The court sentenced Clark to 151 months of imprisonment followed by three years of supervised release. Clark appeals.

## II.

The sole issue on appeal is whether a prior Tennessee marijuana conviction qualifies as a predicate "controlled substance offense" for the Guidelines' career offender enhancement when hemp has been delisted from both the state and federal drug schedules prior to sentencing.

We review de novo whether a prior conviction qualifies as a predicate offense for a Guidelines enhancement. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam). To do so, we employ a three-step categorical approach. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020); *Taylor v. United States*, 495 U.S. 575, 588–89 (1990). Under this approach we look only to the elements of the criminalized conduct, not the defendant's actual conduct. *Havis*, 927 F.3d at 384–85. First, we identify the conduct that was criminalized under the state law of conviction; then, we evaluate that relevant conduct as defined in the Guidelines; and finally, we "overlay the two." *Garth*, 965 F.3d at 495. "[I]f the outer edges of the state law—often the 'least culpable conduct' that the law proscribes—extend past the guidelines' definition, then the conviction doesn't count" as a predicate offense. *Id.* "If, however, the boundaries of the state law and the guidelines' definition are coterminous, or the guidelines' definition sweeps more broadly, then the conviction counts." *Id.* We use the version of the Guidelines "in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).

Employing the categorical approach's first step—identifying the conduct criminalized by the state statute of conviction—Clark benefits from our presuming that his 2014 marijuana convictions were for the "least culpable conduct," which the parties agree in his case would be possession of hemp.

Under step two, we look to the relevant conduct defined in the Guidelines. For the career offender enhancement to apply, a defendant must have at least two prior felony convictions for "controlled substance offense[s]." *Id.* § 4B1.1(a). The Guidelines define a "controlled substance offense" as:

> [A]n offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b). With the Guidelines leaving "controlled substance" otherwise undefined, the parties agree that, although state law criminalized hemp offenses at the time of Clark's prior convictions, both the state and federal drug schedules delisted hemp before the court sentenced Clark for his latest drug offenses in 2021.

We turn then to the dispute here: whether courts assess the meaning accorded the term "controlled substance" by consulting the drug schedules in place at the time of the prior conviction or the drug schedules in place at the time of the instant federal sentencing—a time-of-conviction rule, or a time-of-sentencing rule. The district court here looked to the time of conviction to enhance Clark's sentence under § 4B1.1(a) because hemp was a controlled substance under both state and federal law at the time of his state marijuana convictions in 2014. Thus, the court reasoned that the "state law and the guidelines' definition are coterminous." *See Garth*, 965 F.3d at 495. If courts instead must look to the time of sentencing, hemp's delisting from the state and federal drug schedules prior to sentencing in this case means that his prior 2014 convictions are not predicate offenses under § 4B1.1(a). We adopt a time-of-conviction rule.

**A.**

The time-of-conviction approach flows from the Guidelines' text. Section 4B1.1 states that a career offender is a person who has "at least two *prior* felony convictions" for a crime of violence or controlled substance offense. U.S.S.G. § 4B1.1(a) (emphasis added). Section 4B1.2(c), which immediately follows the definition of "controlled substance offense," further defines "two prior felony convictions" to require that the defendant's commission of the instant offense be "*subsequent to* sustaining at least two felony convictions" for a crime of violence or controlled substance offense. *Id.* § 4B1.2(c) (emphasis added). The words "prior" and "subsequent to" direct the court's attention to events that occurred in the past. Thus, the Guidelines language indicates that the court should take a backward-looking approach and assess the nature of the predicate offenses at the time the convictions for those offenses occurred.

The Supreme Court's decision in *McNeill v. United States*, 563 U.S. 816 (2011), and our opinion in *Mallett v. United States*, 334 F.3d 491 (6th Cir. 2003), confirm the text's support for a time-of-conviction rule.

We begin with *McNeill*. Although no binding caselaw exists that directly addresses the issue presented here, the Supreme Court answered a closely related question in *McNeill*. There, defendant McNeill pled guilty to unlawful possession of a firearm under 18 U.S.C. § 922(g). *McNeill*, 563 U.S. at 818. At sentencing, the district court was tasked with deciding whether he qualified for a sentence enhancement under the Armed Career Criminal Act (ACCA). The ACCA requires a fifteen-year mandatory minimum sentence for any person convicted under § 922(g) if they have at least three previous convictions for "a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). To qualify as a "serious drug offense," the offense must be punishable by "a maximum sentence of ten years or more." *Id.* § 924(e)(2)(A)(i).

The district court determined that McNeill qualified for the enhancement based on at least three prior convictions: two "violent felonies" (assault with a deadly weapon and robbery) and a "serious drug offense." *Id.* § 924(e)(1). McNeill conceded that he was convicted of two violent felonies. *McNeill*, 563 U.S. at 818. But he argued that none of his six previous drug convictions was a serious drug offense. *Id.* Although they were punishable by a sentence of ten years or more at the time McNeill was convicted, the state had since reduced their maximum sentences to below ten years. *Id.* So, he argued, they no longer qualified as serious drug offenses. *Id.* The Supreme Court rejected that argument. It unanimously held that, when determining the maximum term of imprisonment for a prior offense, courts must look to the punishment authorized under the statute at the time of the state conviction rather than at the time of current federal sentencing. *Id.* at 825. The court explained that the statute is "concerned with convictions that have already occurred" so the "only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *Id.* at 820.

Although *McNeill* interpreted the ACCA and here the panel interprets the Guidelines, the cases are remarkably similar. Both involve recidivism enhancements, which by nature concern a defendant's past conduct. In both cases, the defendant relied on an intervening change in state law (and here federal too) that ostensibly shifts the meaning of a provision that enhances their

sentence.  Both cases contemplate whether to define that term with reference to current law, or law from the time of the prior conviction.  *McNeill* definitively held that the time of conviction is the proper reference under the ACCA.

*McNeill* favorably cited our decision in *Mallett v. United States*, 334 F.3d 491 (6th Cir. 2003).  There, we addressed whether a defendant should have his sentence enhanced under the Guidelines based on a prior conviction for a "serious drug offense." *Id.* at 498.  To be a serious drug offense, the prior violation had to be punishable by a maximum term of imprisonment of ten years or more. *Id.* at 499.  Ohio had amended its drug laws in the time since Mallett's prior violation, including the quantity element of the statute under which he was convicted. *Id.* Previously, a person violated the statute if he sold a controlled substance "in an amount less than the minimum bulk amount," measured by either weight in grams or by unit dose. *Id.*  Ohio revised its code to delete the terms "bulk amount" and "unit dose" so that the drug amount could be measured only by weight in grams. *Id.*  These changes obscured whether Mallett could have received a ten-year sentence under the new definition. *Id.* at 499–500.  We held that the district court properly sentenced Mallett as a career offender, relying on two separate reasons for that conclusion: (1) the amended Ohio drug law provided no guidance for determining how Mallett's offense should be classified, and (2) the Guidelines language in § 4B1.2(c) "strongly suggests that, under the Sentencing Guidelines, the classification of a controlled-substance offense as a felony should be determined as of the date that the defendant's guilt of that offense was established, not as of the time of his federal sentencing." *Id.* at 504.

The *McNeill/Mallett* approach finds support in other contexts as well.  In the immigration realm, courts have expressly adopted a time-of-conviction approach.  For example, in *Mellouli v. Lynch*, 575 U.S. 798 (2015), the Supreme Court examined an immigration statute authorizing removal of a noncitizen "convicted of a violation of . . . any law or regulation . . . relating to a controlled substance." *Id.* at 811 (quoting 8 U.S.C. § 1227(a)(2)(B)(i)).  The court looked to the Kansas drug schedules from the time of the prior conviction to determine whether the defendant had violated a law relating to a controlled substance. *Id.* at 808.  Justice Ginsburg, writing for the Court, noted that "tying immigration penalties to *convictions*" serves an important purpose under the categorical approach by "limi[ting] the immigration adjudicator's assessment of a past

criminal conviction to a legal analysis of the statutory offense" rather than examining the underlying facts of those convictions. *Id.* at 805–06 (citation omitted) (emphasis in original). This approach serves efficiency and uniformity, and "enables aliens to anticipate the immigration consequences of guilty pleas in criminal court." *Id.* at 806 (citation omitted); *see also Doe v. Sessions*, 886 F.3d 203, 208–10 (2nd Cir. 2018) ("[A] 'time-of-conviction rule' provides both the Government and the alien with maximum clarity at the point at which it is most critical for an alien to assess . . . whether pending criminal charges may carry a risk of adverse immigration consequences.") (citation omitted); *Gordon v. U.S. Att'y Gen.*, 962 F.3d 1344, 1350–51 & n.4 (11th Cir. 2020); *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018). It is true that the justifications for a time-of-conviction rule are most compelling in the immigration context given the immediate removal consequences that flow from criminal convictions, but citizen criminal defendants, too, deserve the same clarity when they plead guilty to offenses that carry the possibility of future sentencing enhancements if they reoffend.

Beyond the immigration context, courts apply a time-of-conviction approach to several other provisions that lengthen a defendant's sentence or increase the Guidelines range. *See, e.g.*, *United States v. Doran*, 978 F.3d 1337, 1339–40 (8th Cir. 2020) (enhancement under U.S.S.G. § 2K2.1); *United States v. Sanders*, 909 F.3d 895, 901 (7th Cir. 2018) (sentencing enhancement under 21 U.S.C. § 841(b)(1)(B)); *United States v. Turlington*, 696 F.3d 425, 427–28 (3d Cir. 2012) (revocation of supervised release under 18 U.S.C. § 3583(e)(3)); *United States v. Mazza*, 503 F. App'x 9, 11 (2d Cir. 2012) (order) (calculation of criminal history category under U.S.S.G. § 4A1.1(c)); *United States v. Bermudez-Zamora*, 788 F. App'x 523, 524 (9th Cir. 2019) (per curiam) (sentencing enhancement under U.S.S.G. § 2L1.2(b)(3)(A)); *United States v. Moss*, 445 F. App'x 632, 635 (4th Cir. 2011) (per curiam) (sentencing enhancement under 18 U.S.C. § 3559(c)(1)). The application of a time-of-conviction rule in these contexts shows the workability and logic of the approach.

**B.**

Clark makes several counterarguments. None is persuasive.

Clark first contends that "controlled substance" should be interpreted similarly to its neighboring provision that defines "crime of violence." *See* U.S.S.G. § 4B1.2(a). That provision enumerates specific offenses that constitute a crime of violence. He likens the removal of burglary from the enumerated offenses to the removal of hemp from the drug schedules; just as burglary is no longer a predicate offense, neither is hemp. The difference Clark overlooks is that the Commission amended the text of the Guidelines to remove burglary from the crime-of-violence definition. *See* U.S.S.G. Supp. to App'x C, Amend. 798 (Aug. 1, 2016). But the Guidelines' text itself was not similarly amended when hemp was removed from the federal and state drug schedules. *Cf. United States v. Ruth*, 966 F.3d 642, 651 (7th Cir. 2020) (noting that "the career-offender guideline, and its definition of controlled substance offense, does not incorporate, cross-reference, or in any way refer to the Controlled Substances Act" and its accompanying drug schedules). Whether a substance was controlled at the time of conviction remains the proper inquiry based on the Guidelines' text.

Clark also emphasizes what he sees as a determinative textual argument: courts are obligated to "use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a); 18 U.S.C. § 3553(a)(4)(A)(i–ii); *Peugh v. United States*, 569 U.S. 530, 537–38 (2013). From that, Clark extrapolates that the court must use the drug schedules in effect on the sentencing date. After all, Clark reasons, "controlled substance offenses" become relevant only at the time of the sentencing for the instant offense. If Clark had never committed another offense, whether his prior convictions count as controlled substance offenses would be inconsequential. Thus, while all parties agree that the prior convictions are frozen in time for purposes of the first step of the categorical approach, the Guidelines themselves are subject to amendment.

Accepting that a sentencing court applies the currently effective Guidelines, however, leaves unanswered the definitional question: what the term "controlled substance" means at sentencing. Under *McNeill*'s logic, courts must define the term as it exists in the Guidelines at

the time of federal sentencing by looking backward to what was considered a "controlled substance" at the time the defendant received the prior conviction that triggers the enhancement. This approach tracks the purpose of recidivism enhancements. Recidivism enhancements are intended to deter future crime by punishing those future crimes more harshly if the defendant has committed certain prior felonies. *See United States v. Rodriquez*, 553 U.S. 377, 385 (2008) ("[A] second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation."). In this context, the court inherently must consider the nature of past conduct when sentencing for the current offenses. The basic inquiry is whether the defendant did something in the past that makes the current offense more grievous. *See id.* at 386 ("When a defendant is given a higher sentence under a recidivism statute . . . [t]he sentence is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.") (citation omitted). Because "culpability and dangerousness" attach at the time a defendant's guilt is established, that question is best answered by looking to the time of conviction. *See United States v. Williams*, 850 F. App'x 393, 405 (6th Cir. 2021) (Cook, J., concurring in the judgment) (citing *McNeill*, 563 U.S. at 823). It would be absurd to consult current law to define a previous offense.

Clark raises another point about *McNeill*, but this one, too, lacks merit. He maintains that the *McNeill* approach should not govern because the term "serious drug offense" in the ACCA statute refers only to prior offenses while "controlled substance offense" in the Guidelines refers both to prior offenses and instant federal offenses. So, he argues, to adopt a rule that whether something is a "controlled substance" depends on the drug schedules at the time of conviction would create an incongruency in the Guidelines in the instances where the term refers to current offenses. The Guidelines, however, plainly distinguish between prior and current offenses. When the Guidelines refer to prior offenses, it is logical to use the prior drug schedules. When the Guidelines refer to instant offenses, the current drug schedules are an appropriate reference.

Clark also attempts to distinguish *Mallett* by ignoring its second justification: that the Guidelines language in § 4B1.2(c) "strongly suggests" that a controlled substance felony is classified as such at the time of conviction. *Mallett*, 334 F.3d at 504. He insists that "*Mallett*

says nothing about the timing for establishing the relevant federal definition; it holds only that courts must look to the state definition at the time of the state conviction to establish the maximum term of imprisonment for that conviction." Appellant Reply Br. at 7. This view "ignores *Mallett*'s construction of U.S.S.G. § 4B1.2." *Williams*, 850 F. App'x at 404 (Cook, J., concurring in the judgment). This court considered and decided that the proper point of reference for establishing the status of the prior offense as a controlled substance felony is the point at which the defendant's guilt was established. That justification cannot be ignored simply because it was not the sole reason relied upon by the court.

## C.

Clark contends that we should follow the other circuits that have adopted a time-of-sentencing rule. *See United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021); *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021); *United States v. Hope*, 28 F.4th 487, 505–06 (4th Cir. 2022); *but see United States v. Jackson*, No. 20-3684, 2022 WL 303231, at *1–2 (8th Cir. Feb. 2, 2022) (per curiam). Those courts, however, did not adequately engage with *McNeill*'s reasoning.

The Ninth Circuit first decided this issue in *United States v. Bautista*, 989 F.3d 698 (9th Cir. 2021). There, the district court enhanced defendant Bautista's sentence for possession of ammunition under the Guidelines based on a prior marijuana offense. *Id.* at 701. The court held that it was plain error for the district court to rely on the drug schedules from the time of the prior conviction rather than the time of the current sentencing when determining if the marijuana offense was a "controlled substance offense." *Id.* at 705. It reasoned that the state court conviction was not a categorical match with the generic federal offense at the time of his federal sentencing. *Id.* The court distinguished *McNeill*, stating that "*McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code," and "it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is *not* culpable and dangerous." *Id.* at 703 (emphasis in original). Further, this "would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress' ability to revise federal criminal law." *Id.*

The First Circuit took the same approach in *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021). The district court enhanced defendant Abdulaziz's sentence for a firearm offense under the Guidelines based on prior convictions for "crime[s] of violence" and a "controlled substance offense." *Id.* at 521 (quoting U.S.S.G. § 2K2.1(a)(2)). Abdulaziz claimed that his prior conviction for possession of marijuana did not qualify as a controlled substance offense because Massachusetts had delisted hemp in the time between his prior offenses and the instant sentencing. The court held that the proper point of reference for defining a "controlled substance offense" is the drug schedules at the time of sentencing. *Id.* at 524. As in *Bautista*, the court determined that *McNeill* did not resolve the issue because it concerned itself only with ascertaining the elements of the state law of conviction as part of the first step of the categorical approach. *Id.* at 525–26. While *McNeill* clarified that "the elements of the state offense of conviction are locked in at the time of that conviction[,]" the First Circuit held that it does not necessarily follow that the criteria under the text of the enhancement for the current sentencing are also locked in at the time of the previous offense. *Id.* The court reasoned that "[a] guideline's enhancement for a defendant's past criminal conduct . . . is reasonably understood to be based in no small part on a judgment about how problematic that past conduct is when viewed as of the time of the sentencing itself." *Id.* at 528.

The Fourth Circuit agreed in *United States v. Hope*, 28 F.4th 487 (4th Cir. 2022). There, the defendant pled guilty to possessing a firearm and ammunition as a felon, and his sentence was enhanced under the ACCA based on prior convictions for possession of marijuana. *Id.* at 492. Hemp had been delisted between his prior convictions and current sentencing. *Id.* at 498–99. The court held that the categorical approach requires looking to the definition of a controlled substance at the time of the instant sentencing, so the current drug schedules are the proper reference. *Id.* at 504–05. Like the others, the *Hope* court limited *McNeill*'s holding to the context of a later change in state law for purposes of ascertaining the elements of the prior state law of conviction in the first step of the categorical approach.

Most recently, the Eleventh Circuit forged a slightly different path in *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022). There, the court enhanced defendant Jackson's sentence under the ACCA for possession of a firearm. *Id.* at 1297–99. Jackson challenged the

enhancement, arguing that his prior cocaine convictions were not "serious drug offense" predicates because the federal government delisted ioflupane (a substance derived from cocaine) from the Controlled Substances Act in 2015, prior to his instant offense. *Id.* at 1301–02. The court agreed, holding that "due-process fair-notice considerations" required it to "apply the version of the Controlled Substance Act Schedules in place when" Jackson committed the instant offense. *Id.* at 1297. The court distinguished *McNeill* in the same way the other circuits have, stating that the "question was not before the Court in *McNeill*." *Id.* at 1306.

These courts insufficiently grapple with the Supreme Court's reasoning in *McNeill*. For example, the Ninth Circuit in *Bautista* reasoned that the "present-tense text" of 18 U.S.C. § 3553 and U.S.S.G. § 1B1.11 dictate that the court should use a time-of-sentencing rule. *Bautista*, 989 F.3d at 703. But the court in *McNeill* expressly rejected that rationale, stating that "[d]espite Congress'[s] use of present tense . . . we have turned to the version of state law that the defendant was actually convicted of violating." *McNeill*, 563 U.S. at 821. That is because the present-tense argument "overlooks the fact that ACCA is concerned with convictions that have already occurred." *Id.* at 820. The same is true with the Guideline at issue here. Further, the First Circuit in *Abdulaziz* reasoned that "[a] guideline's enhancement for a defendant's past criminal conduct . . . is reasonably understood to be based in no small part on a judgment about how problematic that past conduct is when viewed as of the time of the sentencing itself." 998 F.3d at 528. But *McNeill* reasoned the opposite—that "culpability and dangerousness" attach at the time of conviction. 563 U.S. at 823. Rather than contend with the Supreme Court's reasoning in *McNeill*, these courts sought to cabin the opinion to the first step of the categorical approach and then used reasoning the Supreme Court rejected to justify their path. We decline to adopt this flawed reasoning.

This court, too, considered the issue in an unpublished opinion, and—in dicta—declined to extend *McNeill* and *Mallett*. *See Williams*, 850 F. App'x at 401. In *Williams*, the district court enhanced defendant Williams's sentence for a firearm offense based on a prior marijuana conviction, despite hemp having been delisted from the drug schedules federally and in Tennessee prior to sentencing. *Id.* at 394–95. A majority concluded that the sentencing court should look to the nature of the prior conviction under the law at the time of sentencing to define

a controlled substance. *Id.* at 401. Yet, because the defendant failed to properly preserve his objection, the plain error standard decided the issue. *Id.* at 402. Because this was an unsettled issue in the circuit, the district court's error was not plain. *Id.*; *see also, e.g.*, *United States v. Perry*, 2021 WL 3662443, at *3 (6th Cir. Aug. 18, 2021) (holding that there was no plain error on similar facts); *United States v. Bradley*, 2022 U.S. App. LEXIS 1096, at *14 (6th Cir. Jan. 13, 2022) (same).

The *Williams* majority reasoned that *McNeill* does not compel a contrary result because it only addressed the first prong of the categorical approach. 850 F. App'x at 399. But, once again, the majority did not fully engage the Supreme Court's reasoning in *McNeill*. The *McNeill* Court ascertained the current definition of a statutory term: "serious drug offense." It determined that the proper way to define that term is by referencing state law at the time of conviction. The Court could not have applied the enhancement without assessing all steps of the categorical approach, necessarily deciding that McNeill's prior convictions did in fact constitute "serious drug offenses" under the meaning of the term in the current statute. Attempting to distinguish persuasive Supreme Court precedent, the *Williams* court draws too fine a line between the first and second steps of the categorical approach.

**D.**

Both parties claim that the other's stance would create disparities in sentencing. Yet, the alleged disparities would exist in either scenario. If we adopt Clark's rule, defendants who were convicted on the same day of the same conduct but sentenced one day before and one day after an amendment to the drug schedules, respectively, would face different penalties. Likewise, adopting the government's rule, defendants who were convicted for the same conduct one day before and one day after an amendment to the drug schedules but who are later sentenced on the same day for the same federal offense would also face different penalties. The two rules do not exacerbate or ameliorate sentencing disparities, they merely shift the point at which the disparity originates.

**E.**

Finally, Clark argues that the Guidelines' text is ambiguous so the rule of lenity should tip the scale in his favor. *See United States v. Canelas-Amador*, 837 F.3d 668, 674–75 (6th Cir. 2016). But the rule of lenity plays "a very limited role," applying "only when after seizing everything from which aid can be derived, the statute is still grievously ambiguous." *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (citation omitted); *see also Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (explaining that the rule of lenity applies only when there is a "grievous ambiguity or uncertainty" such that the court "can make no more than a guess as to what" was intended) (citation omitted). Because a reasoned interpretation of the text can be reached by "exhaust[ing] all the tools of statutory interpretation," we need not rely on the rule of lenity here. *Wooden*, 142 S. Ct. at 1075 (Kavanaugh, J., concurring). Moreover, the interpretation we apply here also negates any concern about "fair notice." *See Jackson*, 36 F.4th at 1300. Clark was on notice that his previous convictions were controlled substance offenses at the time he was convicted of them. And under the backward-looking approach, he was on notice that those offenses could result in a greater sentence under the current Guidelines.

**III.**

Overall, Clark fails to raise any arguments that overcome a plain reading of the Guidelines' text, as confirmed by the reasoning in *McNeill* and *Mallett*. Therefore, the district court properly enhanced Clark's sentence under § 4B1.1(a) because courts must define the term "controlled substance offense" in the Guidelines with reference to the law in place at the time of the prior conviction at issue. For these reasons, we affirm the judgment of the district court.

---

**CONCURRENCE**

---

THAPAR, Circuit Judge, concurring. The majority properly employs the categorical approach, as it must. This case demonstrates, yet again, that the whole enterprise is a sham.

Start with what's undisputed. All agree on the facts underlying Clark's two 2014 convictions. In the first instance, Clark was found with 532.7 grams of marijuana; in the second, 123.8 grams of marijuana. Clark doesn't argue—and nothing anywhere in the record suggests—that a single gram was anything other than marijuana.

The categorical approach has us replace these undisputed facts with imaginary ones. In 2014, the "least culpable conduct" the law proscribed was possession of hemp. So we must all pretend that Clark possessed hemp instead of marijuana. Of course, no one believes that. Even Clark can't fully embrace the fiction: He says only that his convictions *could have been* for hemp—not that he actually possessed hemp. But under the categorical approach, what could have been is all that matters. Facts, even undisputed ones, are irrelevant.

It's time to stop playing pretend. *See Mathis v. United States*, 579 U.S. 500, 536–44 (2016) (Alito, J., dissenting). I hope, before long, Congress and the Sentencing Commission will eliminate the categorical approach and bring us all back to reality. *See also United States v. Burris*, 912 F.3d 386, 407–10 (6th Cir. 2019) (en banc) (Thapar, J., concurring); *Lowe v. United States*, 920 F.3d 414, 420 (6th Cir. 2019) (Thapar, J., concurring).