# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2021

Lyle W. Cayce
Clerk

No. 20-10071

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOEL REYNA-ARAGON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-275-1

Before ELROD, WILLETT, and ENGELHARDT, *Circuit Judges*.
KURT D. ENGELHARDT, *Circuit Judge*:

Joel Reyna-Aragon pleaded guilty to illegal reentry after removal from the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). Applying the 2018 Guidelines, the district court sentenced him within the Guidelines range to 60 months of imprisonment. He now appeals his sentence, arguing that the district court committed ex post facto error by sentencing him pursuant to the 2018 Guidelines (those in effect when he was sentenced), rather than the more lenient 2016 Guidelines (those in effect when he committed his offense). He also argues that the district court erred under the

No. 20-10071

Fifth Amendment's Due Process Clause by considering a bare arrest record at sentencing. We AFFIRM.

**I.**

Reyna-Aragon, a native and citizen of Mexico, relocated to the United States as a child. He was granted legal permanent resident status on March 28, 2001, but subsequent criminal activity rendered him deportable. In April 2001, he pleaded guilty in Texas state court to felony sexual assault of a child under 17 ("child sex conviction") and was sentenced to five years of deferred-adjudication probation. In July 2001, he was arrested in Texas on a separate sexual assault charge ("sexual assault arrest"), which ultimately was "no billed." Reyna-Aragon was ordered removed from the United States to Mexico in February 2004.

Shortly after Reyna-Aragon was removed, he reentered the United States. In May 2004, a Texas state court revoked his probation for the child sex conviction and imposed a two-year prison sentence. In August 2005, after his sentence expired, he was ordered removed to Mexico for the second time. Over the next several years, he reentered the United States at least twice more and sustained Texas state court convictions for failure to register as a sex offender, failure to identify himself to a law enforcement officer, and driving while intoxicated ("DWI").

In May 2019, Reyna-Aragon was indicted in the Northern District of Texas for illegally reentering the United States after removal in violation of 8 U.S.C. § 1326(a) and (b)(1). He pleaded guilty to the charge without a plea agreement. In advance of Reyna-Aragon's January 2020 sentencing, a probation officer prepared a presentence report ("PSR"). The probation officer determined that Reyna-Aragon's illegal reentry offense concluded on January 28, 2018, while the 2016 Guidelines were still effective. The probation officer initially applied the 2016 Guidelines in the PSR, reasoning

2

that use of the 2018 Guidelines (those in effect at sentencing) would violate the Constitution's Ex Post Facto Clause. Under the 2016 Guidelines, Reyna-Aragon received a total offense level of 17, including a four-level § 2L1.2(b)(2)(D) enhancement for his felony child sex conviction, and a Guidelines range of 37–46 months of imprisonment.

The Government objected to the probation officer's use of the 2016 Guidelines, arguing that application of the 2018 Guidelines was required and would not result in an ex post facto violation. The probation officer agreed with the Government and issued a revised PSR that applied the 2018 Guidelines and dismissed all previous ex post facto concerns. Under the 2018 Guidelines, Reyna-Aragon received a total offense level of 21, including an eight-level § 2L1.2(b)(2)(B) enhancement for his felony child sex conviction, and a Guidelines range of 57–71 months of imprisonment.

Reyna-Aragon objected to the revised PSR, arguing that the Ex Post Facto Clause barred retroactive application of the 2018 Guidelines, because it yielded a more onerous sentencing range than the 2016 Guidelines in effect at the time of his illegal reentry offense. He contended that the district court was required to apply the 2016 Guidelines. At issue was the § 2L1.2(b)(2) enhancement. Under the 2018 Guidelines, Reyna-Aragon received an eight-level § 2L1.2(b)(2)(B) enhancement because, before his first removal, he engaged in conduct resulting in a felony conviction for which he ultimately received a two-year prison sentence.[1] But under the 2016 Guidelines, Reyna-Aragon would not have received the § 2L1.2(b)(2)(B) enhancement because, before his first removal, the probation on his felony conviction had not yet

---

[1] U.S.S.G. § 2L1.2(b)(2)(B) (2018) ("If, before the defendant was ordered . . . removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in . . . a conviction for a felony offense . . . for which the sentence imposed was two years or more, increase by 8 levels.").

No. 20-10071

been revoked, and he had not yet received a prison sentence.[2] Instead, he would only have received a four-level § 2L1.2(b)(2)(D) enhancement.[3] Reyna-Aragon's objection was overruled by the district court, which adopted the revised PSR and applied the 2018 Guidelines at sentencing.

In arguing for a "midpoint to higher" sentence within the 2018 Guidelines range (57–71 months), the Government contended that Reyna-Aragon posed a danger to the safety of the community, citing his state court convictions and two prior removals. The Government further noted Reyna-Aragon's sexual assault arrest, stating that "it was no billed, but it was deemed serious enough that I think his community supervision was extended."

After hearing from the parties, the district court stated,

> I think that the prior [child sex conviction] is—you know, it may have been 20 years ago, but it's very serious. And then he has another one that he got arrested for. . . . I know he was adjudicated guilty [of the child sex offense]. And then, you know . . . he had two years to do. So it is a serious offense.

---

[2] At the time, the Fifth Circuit interpreted U.S.S.G. § 2L1.2(b)(2)(B) (2016) to apply only if the defendant's probation was revoked, and the sentence imposed, prior to his first removal. *United States v. Franco-Galvan*, 864 F.3d 338 (5th Cir. 2017). The 2018 Guidelines amended § 2L1.2(b)'s text and application notes to specifically nullify *Franco-Galvan*. U.S.S.G. § 2L1.2(b)(2) (2018); U.S.S.G. supp. app. C, amend. 809 ("[T]he length of a sentence imposed for purposes of § 2L1.2(b)(2) . . . should include any additional term of imprisonment imposed upon revocation of probation, suspended sentence, or supervised release, *regardless of whether the revocation occurred before or after the defendant's first (or any subsequent) order of removal*." (emphasis added)).

[3] U.S.S.G. § 2L1.2(b)(2)(D) (2016) ("If, before the defendant was ordered . . . removed from the United States for the first time, the defendant sustained . . . a conviction for any other felony offense . . . increase by 4 levels."); *see Franco-Galvan*, 864 F.3d at 340–43 (four-level enhancement under § 2L1.2(b)(2)(D) (2016) applied to defendant who sustained felony conviction and only received probation before his first removal).

No. 20-10071

. . .

> And then you have the failure to register as a sex offender, which is serious; he's not following his obligations. And he got in trouble for that. He got convicted of a crime for that [and] failure to identify, same time. And then a DWI, which he was involved in a crash. So all that is very serious. And we have another sexual assault arrest, not a prosecution, but, nonetheless, an arrest in 2001. So we have all those serious crimes, and he has been here twice.

> So I think really for the safety of the community, to promote respect for the law and to provide just punishment and all the other [18 U.S.C. § 3553(a)] factors, that 60 months is right. 60 months is not the very bottom, but it's at the bottom of the range, and it will do for me. 60 months is not too much, not more than it should be to carry out the purposes of our sentencing statutes.

After Reyna-Aragon reiterated his ex post facto objection, the district court continued,

> I want to say—and I don't ever say this. But I would have given him 60 months if the ex post facto law had been in place or not, because I think [the child sex conviction] is a serious enough offense. And it was not that long ago, 20 years, but it's still a serious offense, so I would have done it anyway.

The district court issued a final judgment sentencing Reyna-Aragon to 60 months of imprisonment.

Reyna-Aragon timely appealed. Relying on *United States v. Martinez-Ovalle*, 956 F.3d 289 (5th Cir. 2020), he argues that the district court erred by applying the 2018 Guidelines in effect at sentencing, because the Ex Post Facto Clause required application of the more lenient 2016 Guidelines in effect at the time of his illegal reentry offense. The Government concedes the ex post facto error but contends that this error was harmless, because the district court stated that it would have imposed a 60-month sentence

notwithstanding any ex post facto error. Reyna-Aragon additionally argues that the district court erred under the Due Process Clause of the Fifth Amendment by relying on a bare arrest record of his sexual assault arrest at sentencing.

## II.

This court reviews the district court's interpretation and application of the Sentencing Guidelines de novo. *Martinez-Ovalle*, 956 F.3d at 292. Although "[t]here is no dispute but that a district court commits procedural error by improperly calculating the [G]uidelines range," reversal is unwarranted if the error was harmless, "that is[,] the error did not affect the district court's selection of the sentence imposed." *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (internal quotation marks and citation omitted). "The party seeking to uphold the sentence"—here, the Government—has the burden of demonstrating the error's harmlessness. *United States v. Garcia-Figueroa*, 753 F.3d 179, 192 (5th Cir. 2014).

## III.

### A. Ex Post Facto Sentencing Error

We are not bound by the Government's concession of an ex post facto sentencing error and give the issue independent review. *See United States v. Hope*, 545 F.3d 293, 295 (5th Cir. 2008). Generally, a district court must apply the version of the Sentencing Guidelines in effect at the time of sentencing. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). However, when application of the Guidelines effective at sentencing generates a higher sentencing range than application of the Guidelines effective at the time of the defendant's offense, "the Ex Post Facto Clause obligates the district court to apply the older, more lenient Guidelines." *Martinez-Ovalle*, 956 F.3d at 292 & n.13 (citing U.S. CONST. art I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed.")).

No. 20-10071

The parties agree that the district court committed ex post facto error under *Martinez-Ovalle*. Indeed, the facts of *Martinez-Ovalle* are nearly identical to the present case. Reyna-Aragon and the *Martinez-Ovalle* defendant both sustained state court felony convictions for which they initially received probation. *Id*. at 291. Both individuals subsequently were removed from the United States for the first time, reentered the country, had their probations revoked, and received two-year prison sentences. *Id*. Both later pleaded guilty to illegal reentry after removal in federal district court. *Id*. Their illegal reentry offenses both occurred while the 2016 Guidelines were in effect, and their sentencing proceedings both occurred while the 2018 Guidelines were in effect. *Id*. at 290–91. The district courts sentenced both individuals under the 2018 Guidelines and imposed eight-level § 2L1.2(b)(2)(B) enhancements based on their state court felony convictions, which accounted for their two-year prison sentences. *Id*. at 291. If both individuals had been sentenced under the 2016 Guidelines, as interpreted by our court in *Franco-Galvan*, the district courts would have considered only their probations on the felony convictions in calculating the § 2L1.2(b)(2) enhancements; consequently, both would have received lesser four-level enhancements under § 2L1.2(b)(2)(D). *Id*. at 291–92 & nn.6–7.

Because the *Martinez-Ovalle* defendant would have received a lower Guidelines range under the 2016 Guidelines, we held that the district court's application of the more stringent 2018 Guidelines violated the Ex Post Facto Clause. *Id*. at 294–95. Similarly, Reyna-Aragon received a Guidelines range of 57–71 months under the 2018 Guidelines but would have received a lower range of 37–46 months under the 2016 Guidelines. Accordingly, the district court committed ex post facto error when it applied the more onerous 2018 Guidelines in effect at the time of Reyna-Aragon's sentencing, rather than the more lenient 2016 Guidelines in effect at the time of his illegal reentry offense. *See id*. at 294–95.

No. 20-10071

## B. Whether the Error Was Harmless

Citing *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), Reyna-Aragon argues that there is a presumption that the district court committed reversible error, because it based his sentence on an incorrect Guidelines range. However, *Molina-Martinez* established no such presumption. Although the Supreme Court in that case observed that, "[i]n most cases[,] a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome," it also explicitly recognized an exception to that general rule when the record shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." *Molina-Martinez*, 136 S. Ct. at 1346; *see United States v. Sanchez-Hernandez*, 931 F.3d 408, 411 (5th Cir. 2019) (observing that, although *Molina-Martinez* predicted that erroneous calculation of Guidelines range normally would suffice to establish effect on defendant's substantial rights, it did not establish presumption).

We recognize two ways by which the Government can show that a Guidelines error was harmless. "One is to show that the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). The sentencing transcript does not show that the district court expressly considered the correct Guidelines range of 37–46 months.

The other approach to showing harmlessness is twofold. First, the Government must convincingly demonstrate that the district court would have imposed a sentence outside the properly calculated Guidelines range for the same reasons it provided at the sentencing hearing. *United States v. Ibarra–Luna*, 628 F.3d 712, 718–19 (5th Cir. 2010). Second, the Government

must demonstrate that the "sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation," but rather was based on "independent factors." *Id.* at 719. The Government bears a "heavy burden" under this approach. *Id.* at 717.

Citing the seriousness of Reyna-Aragon's criminal history, the district court stated that a 60-month sentence was appropriate under the § 3553(a) factors, with an emphasis on protecting the community, promoting respect for the law, and providing just punishment. The district court then explicitly stated that it would have imposed the same 60-month sentence if its use of the 2018 Guidelines constituted ex post facto error, given the seriousness of Reyna-Aragon's child sex conviction. This statement convincingly demonstrates that the district court would have imposed a sentence outside the properly calculated Guidelines range for the same overarching reason it provided at the sentencing hearing: the seriousness of Reyna-Aragon's criminal history. *Ibarra–Luna*, 628 F.3d at 718–19.

Next, the Government must demonstrate that the district court "was not influenced in any way by the erroneous Guidelines calculation" in selecting the 60-month sentence. *See id.* at 719. We have found that a district court was influenced by an erroneous Guidelines calculation when the district court (1) selected a sentence that "coincide[d] with the lowest end of the improperly calculated [G]uideline[s] range"; and (2) "expressly stated that [the defendant's] prior conduct was 'sufficient to justify a sentence within [the erroneous Guidelines range].'" *United States v. Martinez-Romero*, 817 F.3d 917, 925–26 (5th Cir. 2016) (per curiam).

In another case, we affirmed the sentence of a defendant who had been sentenced at the bottom of an arguably erroneous Guidelines range. *United States v. Castro-Alfonso*, 841 F.3d 292, 297–99 (5th Cir. 2016). In reaching an

No. 20-10071

alternative holding that any error was harmless, we cited the following passage from the district court's pronouncement of sentence:

> In imposing [the 46–month] sentence the Court has considered all the 3553(a) factors. The Court believes that its ruling on the objection is correct. But if the Court is in error, the Court, nonetheless, would impose the same sentence noting that it's reflected in the transcript itself, the offense was one that involved burglary of a dwelling. *So the Court would impose the same sentence even if it is in error as to the enhancement here.*

*Id.* at 298 (alteration in original). Based on this passage, we concluded that the district court did not "beat around the bush" or "equivocate" in selecting the sentence; rather, the district court "elaborated upon [its] reasoning and stated plainly that the court would have imposed the same sentence regardless of whether the court was in error." *Id.* We further found that the district court's "firm, plain, and clear" expression of its reasoning in *Castro-Alfonso* was distinguishable from *Martinez-Romero*, where there was record evidence of the district court's improper influence by an erroneous sentencing range. *Id.* at 298–99; *c.f. Martinez-Romero*, 817 F.3d at 925–26.

Although Reyna-Aragon's 60-month sentence did not coincide with the lowest end of the erroneous Guidelines range of 57–71 months, *c.f. Martinez-Romero*, 817 F.3d at 925–26, he contends that the district court demonstrated that it was influenced by the erroneous range when it stated that "60 months is not the very bottom, but it's at the bottom of the range, and it will do for me." For the following reasons, we find that this statement, read in the context of the entire sentencing transcript, was simply an observation of where the 60-month sentence happened to fall—not an express justification of that sentence within and based upon the erroneous Guidelines range.

No. 20-10071

First, the district court explicitly instructed the Government to present its sentencing argument without reference to the erroneous Guidelines range:

> GOVERNMENT: Your Honor, I certainly think a sentence within the guidelines—
>
> DISTRICT COURT: I mean, I want to hear what you have to say. Just . . . don't say within the guidelines. Let me hear what you have to say, really.

Second, the district court's reference to the location of the 60-month sentence within the erroneous Guidelines range was made in the context of its broader discussion of the independent reasons for selecting that sentence. Specifically, the district court explained that "60 months is not too much, not more than it should be to carry out the purposes of our sentencing statutes," including protecting the community, promoting respect for the law, and providing just punishment. Finally, as discussed above, the district court expressly stated that it would have imposed the 60-month sentence regardless of whether its use of the 2018 Guidelines constituted ex post facto error, given Reyna-Aragon's criminal history.

Thus, the record reflects that the district court justified Reyna-Aragon's 60-month sentence on factors independent from the erroneous Guidelines range. *See Ibarra–Luna*, 628 F.3d at 719; *c.f. Martinez-Romero*, 817 F.3d at 925–26. Additionally, the district court's "firm, plain, and clear" statement that a 60-month sentence was appropriate regardless of any ex post facto error closely resembles the statement upon which we based our harmlessness holding in *Castro-Alfonso*. *See* 841 F.3d at 298–99. Accordingly, we find that the district court was not influenced by the erroneous Guidelines calculation in imposing Reyna-Aragon's 60-month sentence. *See Ibarra–Luna*, 628 F.3d at 719.

For the foregoing reasons, we find that the Government has satisfied its "heavy burden" of proving that the district court's Guidelines error was harmless. *See id.* at 717–19.

## C. Bare Arrest Record

Reyna-Aragon contends that the district court violated the Due Process Clause at sentencing by considering the PSR's description of his no-billed Texas sexual assault arrest, which he characterizes as a bare arrest record. He argues that he preserved this challenge in the district court, citing the following statement made by his defense counsel at sentencing: "Not having the full case report, it's difficult for us to gauge exactly what happened." However, this statement, on its face, hardly constitutes an objection to the district court's reliance on a bare arrest record. Further, after reviewing the sentencing transcript, we find that defense counsel's statement referred to Reyna-Aragon's child sex conviction, not his sexual assault arrest.

Because Reyna-Aragon did not raise this issue in the district court, plain error review applies. *See United States v. Williams*, 620 F.3d 483, 493 (5th Cir. 2010). To succeed, he must show a clear or obvious error that affects his substantial rights, that is, the error "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). If he makes this showing, we have the discretion to correct the error if it has a serious effect on "the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Olano*, 507 U.S. at 736).

"It is well-established that prior criminal conduct not resulting in a conviction may be considered by the sentencing judge." *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (per curiam) (citing *United States v. Jones*, 444 F.3d 430, 434 (5th Cir. 2006)). Nevertheless, "for a non-Guidelines sentence, just as for a Guidelines sentence, it is error for a

district court to consider a defendant's 'bare arrest record' at sentencing." *United States v. Johnson*, 648 F.3d 273, 278 (5th Cir. 2011). "The term 'bare arrest record,' in the context of a PSR describes the reference to the mere fact of an arrest—*i.e.* the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest." *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012) (per curiam). Generally, a PSR has sufficient indicia of reliability and its facts may be adopted without further inquiry if an adequate evidentiary basis is provided and the defendant does not offer rebuttal evidence or otherwise show that the PSR's information is not reliable. *Id.* at 230–31. A no-bill under Texas law is "nothing more than the decision by a particular grand jury that the specific evidence before it did not convince it to charge the defendant with an offense," and "[b]y itself, the no-bill cannot transform a factual recitation with sufficient indicia of reliability into one that lacks such indicia." *United States v. Fields*, 932 F.3d 316, 323 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1299 (2020).

In addition to the date, charge, jurisdiction, and disposition of the Reyna-Aragon's sexual assault arrest, the PSR described the allegations contained in the criminal complaint, including the identity of the alleged victim and the specific conduct of the alleged offense:

> According to the Criminal Complaint, on or about July 1, 2001, the defendant did knowingly and intentionally: with the specific intent to commit the offense of sexual assault of [C. A.], by placing his hand on her breasts and unfasten[ing] her shorts against her will, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

*See* TEX. CODE CRIM. PROC. arts. 15.04 & 15.05 (criminal complaint affidavit "must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and

does believe, that the accused has committed such offense"). Thus, the PSR contained corresponding information detailing the conduct that led to Reyna-Aragon's sexual assault arrest. *See Harris*, 702 F.3d at 229. Because there was an adequate evidentiary basis and Reyna-Aragon did not offer rebuttal evidence or show that the information was not reliable, the PSR was reliable, and the district court was permitted to adopt it. *See id.* at 230–31.

In questioning the correctness of the district court's reliance on the PSR's description of his sexual assault arrest, Reyna-Aragon again cites to his defense counsel's statement at sentencing regarding the district court's inability to know "exactly what happened" as to that arrest. As explained above, defense counsel's statement referred to Reyna-Aragon's child sex conviction, not his sexual assault arrest. Citing another statement made by the district court at sentencing, Reyna-Aragon asserts that the district court acknowledged its lack of knowledge and reliable evidence about the sexual assault allegation. Read in context, the district court does not express any doubt regarding the veracity of the sexual assault allegation; rather, the district court merely admits its inability to verify whether Reyna-Aragon's community supervision had been extended following the sexual assault arrest, as had been previously alleged by the Government at the sentencing hearing.

Finally, Reyna-Aragon fails to show that the district court's reliance on the PSR's description of his sexual assault arrest affected his substantial rights. *See Puckett*, 556 U.S. at 135. In concluding that the § 3553(a) factors supported a 60-month sentence, the district court did not simply rely on Reyna-Aragon's sexual assault arrest; it additionally based its sentencing decision on his multiple reentries into the United States and his Texas state court convictions for sexual assault of a child under 17, failure to register as a sex offender, failure to identify himself to a law enforcement officer, and DWI. Reyna-Aragon has not shown that he would have received a lower

sentence but for the consideration of his sexual assault arrest. *See Williams*, 620 F.3d at 495–96.

For the foregoing reasons, we find that the PSR's description of Reyna-Aragon's sexual assault arrest was not a "bare arrest record." *See Harris*, 702 F.3d at 229–31. Reyna-Aragon fails to show that the district court committed any error—much less clear or obvious error—affecting his substantial rights in its reliance on this description at sentencing. *See Puckett*, 556 U.S. at 135.

## IV.

For the foregoing reasons, we AFFIRM the district court's final judgment sentencing Reyna-Aragon to 60 months of imprisonment.