USA v. Gibson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2021

(Argued:  November 23, 2021                    Rehearing Decided: February 21, 2023)

Docket No. 20-3049

_____

UNITED STATES OF AMERICA,

*Appellant*,

- v. -

VINCENT GIBSON,

*Defendant-Appellee*.

_____

Before:  KEARSE, LOHIER, and LEE, *Circuit Judges*.

Petition by the United States for a panel rehearing of this Court's decision in *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), and for an amended opinion stating that the ruling that the 2015 removal of naloxegol from the federal controlled

substances schedules rendered those schedules categorically narrower than the relevant New York drug schedules was nonprecedential. The petition for a panel rehearing is granted; the request for an amended opinion is denied.

Tiffany H. Lee, Assistant United States Attorney, Attorney, for Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, New York.

*PER CURIAM*:

The government petitions for a panel rehearing of so much of our decision in *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), as ruled that the 2015 removal of naloxegol from the federal controlled substances schedules promulgated under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-971, rendered those schedules categorically narrower than the New York drug schedules applicable to Gibson's 2002 state-law conviction. The government's petition suggests that that ruling in our opinion ("Opinion") was dictum rather than a holding, and asks that we issue an amended opinion so stating. We grant rehearing in order to note the government's various positions on the comparability of the state and federal drug

2

schedules, and to flag some defects in the petition's characterizations of the record; we deny the request for an amended opinion.

To begin with, we note that the government's petition repeatedly confuses this appeal with the case as a whole. It states, for example, that our Opinion "explained that the *disparity issue* was *not presented at all in this case*." (Government Petition (or "Petition") at 10 (emphases added).) Our Opinion instead stated that "*this appeal* presents fewer issues than might have been raised." *Gibson*, 55 F.4th at 158 (emphasis added). The Opinion proceeded to note, *inter alia*, that the government had "not argue[d] that the New York law was not broader than the current federal schedules" "*in response to Gibson's contention*" in the district court that New York law was broader than federal law. *Id*. at 158-59 (emphasis added). And while the government characterizes the Opinion as saying that "the Government was bound *in this case* not to contest the disparity issue" (Petition at 9 (emphasis added)), the Opinion instead noted that "[t]he government is correct that it 'is constrained from arguing *on appeal* that the drug schedules are comparable even after the 2015 amendment removing naloxegol,' having made no such argument in the district court." *Gibson*, 55 F.4th at 160 (quoting Government's reply brief on appeal at 12 (emphasis ours)). As we stated, "[t]he issue raised by Gibson's central contention--

3

that the state and federal schedules diverged--did not remain unresolved by the government's refusal to address it." *Gibson*, 55 F.4th at 160. We did not indicate that any prior holding of this Court--or anything in the record of this case--could warrant the government's claiming to have been "bound" or "constrained" from contesting--in light of the federal delisting of naloxegol--the comparability issue in the district court.

Nor can we credit the government's notions that "th[e] argument" "that 'federal law [is] categorically narrower than the state-law counterpart' based on the [federal-law] descheduling of naloxegol" "*was . . . no[t] before the district court*" (Government Petition at 4 (emphasis added)), and that the "issue"--*i.e.*, whether "state law at the time of [Gibson's 2002 drug] offense" was broader than current federal law--"*was not briefed* [on appeal] *by either party*" (*id*. at 3 (emphasis added)). In Gibson's appellate brief, pages 10-14 discussed that issue. (*See, e.g.*, Gibson brief on appeal at 12 (under "the categorical approach in the present case, the district court properly determined that [New York Penal Law] § 220.39(1) reaches conduct that would not be criminalized federally"); *id*. ("New York's definition of 'narcotic drug' is broader than the federal schedules."); *id*. at 13 ("Simply put, federal law controls 'any . . . derivative . . . of opium or opiate,' subject to certain exceptions, among them naloxegol. New York has no such exception. Naloxegol is an opiate derivative.").)

4

And in the district court, Gibson had made these points in opposing the government's contention that his sentence should be enhanced pursuant to Guidelines § 4B1.1 on the basis of his two prior New York convictions, one of which was his 2002 drug offense. Gibson had immediately pointed out that New York law governing that offense was broader than current federal law; he argued that while two predicate offenses are required for application of § 4B1.1, the court should find one of his two prior convictions relied on by the government--his prior drug conviction--is not a proper predicate because the current federal schedules of controlled substances are narrower than New York's 2002 drug schedules. *See, e.g., Gibson*, 55 F.4th at 156-57. The government argued that Gibson's "argument is without merit" because the court should look at the federal schedules only as they existed at the time of Gibson's prior New York drug offense in 2002, not as they exist currently. (Government's Response in Opposition to Defendant's Memorandum of Law, dated December 2, 2019 ("Government's December 2 Mem."), at 4.)

The implicit premise of the government's timing argument was that the New York schedules under which Gibson was convicted in 2002 were broader than the current federal schedules. Although the government suggests in its petition that it has some question as to whether naloxegol was within the New York controlled

5

substance schedules (*see* Petition at 13-14), it did not contest during the proceedings in the district court (*see*, *e.g.*, Government's December 2 Mem. at 4), that naloxegol was a federally controlled substance in 2002 but after January 2015 was no longer federally controlled, *see* Schedules of Controlled Substances: Removal of Naloxegol From Control, 80 Fed. Reg. 3468, 3468 (Jan. 23, 2015). And knowing that the federal schedules in 2002 included naloxegol, the government repeatedly represented to the district court that the New York schedules under which Gibson was convicted in 2002 were coextensive with federal law at that time: It stated that the "New York schedule of substances in 2002 *correlate[d] with the CSA schedules in place in 2002*" (Government's December 2 Mem. at 5 (emphasis added)); that "the *state and federal schedules in 2002 mirror[ed] each other*" (*id*. at 6 (emphasis added)); that Gibson "was convicted at a time where [*sic*] *the schedules were exactly the same*" (Motion Hearing Transcript January 31, 2020, at 3 (emphasis added)). The unspoken impetus for the government's insistence that the court should look only to the 2002 federal schedules, and not to the current federal schedules (which exclude naloxegol), was that the New York law applicable to Gibson's 2002 conviction was broader than current federal law. If the New York schedules were *not* broader, there would have been no reason to insist that the court not look to the current federal schedules.

6

The government's implicit recognition that the New York schedules governing Gibson's 2002 conviction were broader than current federal law became explicit in the government's opening brief on appeal. It stated:

> While the state and federal drug schedules aligned in 2002, *a 2015 amendment to the Controlled Substances Act ("CSA") removed naloxegol as a federally controlled substance,* ***rendering New York State Penal Law § 110/220.39-1 broader than its federal counterpart***.

(Government brief on appeal at 6 n.2 (emphasis added).) The government argued that the nature of the state-law drug offense of which Gibson was convicted in 2002 was not affected by the fact "[t]hat *the drug schedules diverged* 13 years [there]after." (*Id*. at 11 (emphasis added).)

Although the government sought, in its reply brief, to retreat from the explicit statements it made in its main brief as to New York drug laws' greater breadth than current federal law (*see* Government reply brief on appeal at 11-13)-- arguing that "[a]ny substantive argument on *whether the schedules have diverged should be handled* first at the district court level *upon remand for resentencing*" (*id*. at 12-13 (emphases added))--that argument made no sense. If, as the government urged, the case were remanded because the 2002 federal drug schedules were the proper frame

7

of reference, the issue of whether the state law is broader than current federal law would be irrelevant.

Regardless of the manner in which the government chose to support its argument for the imposition of an enhanced sentence on Gibson under Guidelines § 4B1.1, the question of the comparability of the state drug schedules applicable to Gibson's 2002 conviction and the current federal schedules was in fact an issue in the case and was in fact "handled" in the district court. A district court is required to "begin all sentencing proceedings by correctly calculating the applicable [advisory] Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The government argued that the proper Guidelines imprisonment range for Gibson was 151 to 188 months pursuant to § 4B1.1; Gibson contended that his prior drug conviction was not a proper predicate for the application of § 4B1.1 because (a) a defendant is to be sentenced under the version of the Guidelines currently applicable to him, (b) the Guidelines incorporate the federal drug schedules, and (c) the current federal schedules are narrower than the New York drug schedules, *see Gibson*, 55 F.4th at 156-57. Plainly, the parties disputed whether Gibson's 2002 drug conviction was a proper predicate for an enhancement under § 4B1.1 of the Guidelines; and a comparison of the state and federal drug schedules was essential to the resolution of

8

that dispute. As the government correctly says at the outset of its petition, in order to decide "[w]hether a prior conviction qualifies as a 'controlled substance offense,' U.S.S.G. § 4B1.2(b)," the courts must "determine whether [a] state statute" relied on by the government "is categorically broader than its federal counterpart: if it is broader, the state conviction is not a controlled substance offense; if it is not broader, the state conviction is a controlled substance offense." (Government Petition at 1.)

As described in *Gibson*, 55 F.4th at 157-58, the district court concluded, citing *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), that it was required to assess the comparability of the state and federal drug schedules under current federal law. It thus could not rule as it did--*i.e.*, that Gibson's 2002 conviction was not a proper § 4B1.1 predicate, *see*, *e.g.*, *Gibson*, 55 F.4th at 159-60--without concluding that the 2002 New York drug schedules were broader than the current federal drug schedules. The fact that the government elected not to contest the divergence did not mean that "the issue" did not exist or that the district court was relieved of its normal obligation to calculate the applicable Guidelines range.

Our Opinion stated that we were "[r]eviewing the district court's Guidelines interpretations and legal rulings *de novo*," *Gibson*, 55 F.4th at 161. As to the

respective contents of the 2002 New York drug schedules and the current federal schedules, we observed, *inter alia*, that

> [a]s relevant here, th[e] schedule II(b) list of controlled substances [in New York's drug schedules] includes--as it apparently did in 2002--"[o]pium and opiate, and *any* salt, compound, *derivative*, or preparation *of opium or opiate*." N.Y. Pub. Health Law § 3306 Schedule II(b)(1) (McKinney 2002) ("New York schedule II(b)(1)") (emphases added). Naloxegol is an opium alkaloid derivative. *See generally* Schedules of Controlled Substances: Removal of Naloxegol From Control, 80 Fed. Reg. 3468, 3468 (Jan. 23, 2015) ("Naloxegol Delisting Rule") ("Prior to the effective date of this rule, *naloxegol* was a schedule II controlled substance because it *can be derived from opium alkaloids*.").

*Gibson*, 55 F.4th at 156 (last two emphases ours). And we concluded that the district court had correctly ruled that "[f]ederal criminal law--both at the time of [Gibson's 2017] conduct and at the time of sentencing for it--was narrower than the state law that governed Gibson's 2002 conviction," *id*. at 155, and that the court had correctly concluded that § 4B1.1 was thus "inapplicable to Gibson for lack of a necessary predicate," *id*. at 167.

Plainly, the comparability of the New York's 2002 drug schedules and the current federal drug schedules was an issue that the district court was required to, and did, decide in order to make a determination as to what Gibson's Guidelines sentence would be. This Court was required to, and did, determine whether the

10

district court's decision was correct. The government's request for an amended opinion suggesting that these rulings were not holdings is denied.