# United States Court of Appeals for the Fifth Circuit

———————————

No. 22-51083

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Edgar Hermosillo Minor,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CR-1942-1

———————————————————————

Before Richman, Haynes, and Duncan, *Circuit Judges*.

Haynes, *Circuit Judge*:

Edgar Hermosillo Minor appeals the district court's application of the career-offender enhancement to his sentence, arguing that a 2018 amendment to the Controlled Substances Act results in his prior convictions criminalizing a broader swath of conduct than the Sentencing Guidelines' current definition of "controlled substance offense," and therefore, the enhancement does not apply to him. For the reasons that follow, we REVERSE and REMAND for resentencing.

No. 22-51083

## I.    Background

Edgar Hermosillo Minor pled guilty to four drug charges in 2022: (1) importing methamphetamine, (2) possessing methamphetamine with intent to distribute, (3) importing fentanyl, and (4) possessing fentanyl with intent to distribute.

Minor's presentence report ("PSR") calculated his base offense level as 34. The PSR subtracted two levels because of Minor's minimal role in the offenses, and three levels because he accepted responsibility and assisted the authorities. But it added five levels due to a career-offender enhancement based on Minor's three prior convictions. The three prior convictions were for federal marijuana-related offenses: two in 2000 and one in 2010.[1] Based on a total offense level of 34 and a career offender criminal-history category of VI, the PSR placed Minor in an advisory Sentencing Guidelines ("Guidelines") range of 262 to 327 months' imprisonment. Without the career-offender enhancement, Minor states that the range would have been 121 to 151 months (criminal-history category of IV and offense level of 29).

Minor objected to the career-offender enhancement because a 2018 amendment to the Controlled Substances Act ("CSA") narrowed the definition of marijuana by excluding hemp, and therefore, according to Minor, his pre-2018 marijuana convictions no longer qualified as "controlled substance offenses" under the categorical approach. The district court overruled Minor's objection and applied the CSA's definition of marijuana in place at the time of Minor's earlier sentencings, not at the time of Minor's

---

[1] The first two convictions in 2000 were for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a). The third conviction in 2010 was for possession of marijuana with intent to distribute in violation of § 841(a) and importing marijuana in violation of § 952(a).

2022 sentencing. Nonetheless, the district court applied a downward variance, sentencing Minor to 180 months' imprisonment after concluding that the 262-to-327-month range would have imposed "way too much" time. Minor timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over this case under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review de novo the district court's interpretation and application of the Guidelines. *United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016).

## III.    Discussion

There are two issues before us: (1) whether the district court erred by applying the career-offender enhancement when calculating Minor's Guidelines range, and (2) if so, whether that error was harmless.

### A. The career-offender enhancement does not apply

A defendant qualifies for the career-offender enhancement under the Guidelines if, inter alia, that defendant "has at least two prior felony convictions of . . . a controlled substance offense." U.S. SENT'G GUIDELINES MANUAL § 4B1.1(a)(3) (U.S. SENT'G COMM'N 2021). The Guidelines define "controlled substance offense" as a "federal or state" offense "punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a *controlled substance* (or a counterfeit substance) or the possession of a *controlled substance* (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Guideline § 4B1.2(b)(1) (emphasis added). The Guidelines do not define "controlled substance." But we define "controlled substance," as used in the Guidelines, by looking to the definition supplied by the CSA. *Cf. United States v. Gomez-Alvarez*, 781 F.3d

No. 22-51083

787, 792–94 (5th Cir. 2015) (tying definition of controlled substance in Guideline § 2L1.2 to definition of controlled substance supplied by CSA); *United States v. Arayatanon*, 980 F.3d 444, 453 n.8 (5th Cir. 2020) ("Because the qualifying prior convictions in § 2L1.2 and § 4B1.2(b) are defined in substantially the same way, cases discussing these definitions are cited interchangeably." (internal quotation marks and citations omitted)).[2]

Under the categorical approach, a "prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision" if the "crime of conviction criminalizes a 'greater swath of conduct' than the elements of the relevant Guidelines offense."[3] *Hinkle*, 832 F.3d at 576–77 (alteration adopted) (quoting *Mathis v. United States*, 579 U.S. 500, 509 (2016)). Minor's predicate marijuana offenses aligned with the Guidelines' definition of "controlled substance offense" in effect at the time of his predicate sentencings. But those offenses criminalize a broader swath of conduct than the Guidelines' definition of "controlled substance offense" in effect at the time of his sentencing for the instant offense. That is because, in 2018, the Agriculture Improvement Act removed "hemp"[4] from the CSA's definition of marijuana. 21 U.S.C. § 802(16)(B)(i).

So, whether the career-offender enhancement applies to Minor hinges on whether we compare Minor's predicate convictions to the CSA's

---

[2] The parties both agree that the definition of "controlled substance offense" is defined by reference to the CSA. The government points out, however, that we have not previously had occasion to do so for Guideline § 4B1.2.

[3] The government conceded at oral argument that we must apply the categorical approach in the instant case.

[4] "The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

definition of controlled substance in effect at the time of his predicate sentencings or the definition in effect at the time of sentencing for the instant offense. Minor asserts that the text of the Sentencing Reform Act and the Guidelines direct us to apply the CSA's definition of controlled substance in effect at the time of sentencing for the instant offense. We agree.

The Sentencing Reform Act states that, when imposing a sentence, courts should consider the Guidelines and any pertinent policy statements that are "in effect on the date the defendant is sentenced." 18 U.S.C. §§ 3553(a)(4)(A)(ii) and (a)(5)(B). Likewise, the Guidelines instruct courts to "use the Guidelines Manual in effect on the date that the defendant is sentenced." Guideline § 1B1.11(a). Although the Guidelines do not define "controlled substance," as discussed above, our precedent directs us to use the definition supplied by the CSA. *See Gomez-Alvarez*, 781 F.3d at 792–94. So, applying the Guidelines in effect at the time of current sentencing means incorporating the CSA's definition of "controlled substance" in effect at the time of current sentencing.

The reference canon also supports our conclusion. "According to the 'reference' canon, when a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises." *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019). For example, "a general reference to federal discovery rules incorporates those rules as they are found on any given day." *Id.* at 210 (internal quotation marks and citation omitted). "In contrast, a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments." *Id.* at 209–10. Here, the Guidelines' general reference to "controlled substance" weighs in favor of applying the definition of that term "as it exists whenever a question under the statute arises"—i.e., sentencing for the instant offense. *Id.* at 209.

No. 22-51083

The government does not meaningfully dispute these textual requirements. Instead, the government posits that Guideline § 4B1.1's use of the phrase "prior felony convictions" invites the court's attention to events that occurred in the past and therefore requires a backward-looking approach to determine the nature of the predicate offense. We agree that courts must look backward to determine the elements of a defendants' prior felony convictions. That is the first step. But once the elements of the prior felony convictions have been determined, the second step is to compare them to the Guidelines' definition of "controlled substance offense." As discussed above, the relevant definition for comparison purposes is the one in effect at the time of the current sentencing.

The First, Second, and Ninth Circuits agree with this approach.[5] *See United States v. Gibson*, 55 F.4th 153, 159 (2d Cir. 2022), *pet. for amended op. denied*, 60 F.4th 720 (2d Cir. 2023) (per curiam); *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021) (addressing enhancement in Guideline § 2K2.1(a)); *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021) (same). Like us, these circuits all use the CSA's definition of "controlled substance" to define the meaning of that phrase as used in the Guidelines. *Gibson*, 55 F.4th at 157; *Abdulaziz*, 998 F.3d at 523; *Bautista*, 989 F.3d at 702. Notably, the circuits that do not apply the time-of-current-sentencing approach do not incorporate the CSA's definition of "controlled substance" into the Guidelines. *See United States v. Lewis*, 58 F.4th 764, 771 (3d Cir.), *cert. denied*, 144 S. Ct. 489 (2023) (addressing enhancement in Guideline § 2K2.1(a)); *United States v. Clark*, 46 F.4th 404, 411 (6th Cir. 2022); *United States v.*

---

[5] The Second Circuit has left open the question whether "the version of the CSA schedules on which the district court should focus is the version in effect on the date of the defendant's sentencing for his current offense rather than on the date on which he committed his current offense." *United States v. Gibson*, 55 F.4th 153, 165 (2d Cir. 2022).

No. 22-51083

*Henderson*, 11 F.4th 713, 717–19 (8th Cir. 2021). The textual analysis for those circuits is therefore different.[6]

The government's next argument is that the Supreme Court's decision in *McNeill v. United States*, 563 U.S. 816 (2011) requires us to adopt the time-of-prior-conviction approach. But *McNeill* does not resolve the question before us.

*McNeill* dealt with the Armed Career Criminal Act's ("ACCA") sentence enhancement for offenders with three or more previous convictions of a serious drug offense. 563 U.S. at 817; *see also* 18 U.S.C. § 924(e)(1). ACCA defines "serious drug offense" as one for which, inter alia, the maximum term of imprisonment is ten or more years. 18 U.S.C. § 924(e)(2)(A). *McNeill* held that the "'maximum term of imprisonment' for a defendant's prior state drug offense is the maximum sentence applicable to his offense when he was convicted of it." *McNeill*, 563 U.S. at 817–18.

*McNeill* is distinguishable for two reasons: (1) it concerned ACCA rather than the Guidelines, and (2) it resolved a question about the first step of the categorical approach rather than the second. That *McNeill* concerns ACCA rather than the Guidelines is significant because of their textual differences. As discussed above, the Guidelines, along with the Sentencing Reform Act, explicitly direct courts to apply the Guidelines in effect at the time of sentencing. 18 U.S.C. §§ 3553(a)(4)(A)(ii) and (a)(5)(B); Guideline § 1B1.11(a). ACCA does not contain the same directive.[7]

_____

[6] We must follow our own precedents and those of the Supreme Court. Given the circuit split, we still must follow our precedent unless and until the Supreme Court ultimately determines this issue.

[7] The same distinction applies to *United States v. Garza*, 93 F.4th 913 (5th Cir.) (per curiam), *cert. denied*, 2024 WL 4743154 (2024), which dealt with a different sentencing enhancement found in 21 U.S.C. § 841(b)(1)(D) rather than in the Guidelines.

No. 22-51083

That *McNeill* addressed a different step of the categorical approach is also significant. *McNeill* instructs courts conducting the first step of the categorical approach to look to the *attributes* of the predicate offense at the time of conviction for that offense (in *McNeill*, the relevant attribute was the maximum punishment). *See* 563 U.S. at 819–20. But *McNeill* did not address the second step—to what the predicate offense's attributes should be *compared*, which is the question at issue here. *See id.* In the present case, the relevant comparison point in the second step is dynamic—the CSA's definition of "controlled substance." In *McNeill*, however, the relevant comparison point in the second step was static—a maximum term of ten years. *See id.*; *see also* 18 U.S.C. § 924(e)(2)(A). *McNeill* therefore had no occasion to address the question before us, or even a parallel question in the context of ACCA.

Finally, after we heard oral argument in this case, the Supreme Court *did* have occasion to address a parallel question in the ACCA context. *See Brown v. United States*, 602 U.S. 101, 105–06 (2024).[8] *Brown* concerned 18 U.S.C. § 924(e)(2)(A)(ii)'s definition of "serious drug offense" as one "involving . . . a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." The Court addressed "whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed." *Id.* at 106.

---

[8] At our request, the parties submitted supplemental letter briefs addressing *Brown*'s impact on the present case. Minor argues that *Brown* does not alter the result of this case because its ACCA-specific reasoning does not extend to the career offender enhancement. The government acknowledges that "*Brown* leaves open the possibility that a different approach could theoretically apply under the Guidelines" but nonetheless urges us to adopt a time-of-prior-offense rule.

The Court held that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules *at the time of that offense*." *Id.* at 123 (emphasis added). In doing so, it relied on precedent, statutory context, and statutory purpose because the text of ACCA does not resolve the question. *Id.* at 111, 119. Regarding precedent, the Court held that *McNeill*'s "'backward-looking' approach" supported its conclusion. *Id.* at 111–12. Regarding statutory context, the Court explained that its reading prevents different outcomes for ACCA's differently worded subsections dealing with state and federal predicate offenses. *Id.* at 111–14 (citing 18 U.S.C. § 924(e)(2)(A)(i) and (ii)). Finally, turning to statutory purpose, the Court explained that ACCA imposes a high punishment on those who have repeatedly committed ACCA predicate offenses because such defendants are "especially likely to inflict grave harm when in possession of a firearm." *Id.* at 113 (quoting *Wooden v. United States*, 595 U.S. 360, 375 (2022)). The Court reasoned that "[a] defendant's 'history of criminal activity' does not 'cease to exist' merely because the crime was later redefined." *Id.* at 113–14 (quoting *McNeill*, 536 U.S. at 823).

Because ACCA and the Guidelines differ in key ways, as both the Supreme Court and the government acknowledge, we understand that *Brown* does not dictate the outcome in the case before us. *See United States v. Bates*, 24 F.4th 1017, 1018 (5th Cir. 2022) (per curiam) ("[T]his is not an ACCA case. The Sentencing Guidelines do not fall under that statute."). First, the government acknowledges that the Court in *Brown* cast doubt on whether it would employ the same approach in the Guidelines context because, "Congress has expressly directed courts to apply the Guidelines 'in effect on the date the defendant is sentenced,'" while "ACCA contains no similar instruction." 602 U.S. at 120 n.7 (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)); *see also* Guideline § 1B1.11(a) (instructing courts to "use the Guidelines Manual in effect on the date that the defendant is sentenced").

Second, the reference canon operated differently in *Brown* than it does here. *See* 602 U.S. at 115–16. *Brown* explained that "a reference 'to another statute by specific title or section number'—such as ACCA's reference to 21 U.S.C. § 802—'in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, *without any subsequent amendments.*'" *Id.* at 116 (quoting *Jam*, 586 U.S. at 209–10 (emphasis added)). But here, as discussed above, the Guidelines' reference to "controlled substance" is general, and therefore "incorporates 'the law on that subject as it exists whenever a question under the statute arises.'" *Id.* (quoting *Jam*, 586 U.S. at 209).

Turning to *Brown*'s statutory purpose analysis, we acknowledge that the career-offender enhancement is a recidivist statute, like ACCA, and that the approach we have adopted will, in some cases, spare recidivists from the career-offender enhancement. But the Guideline enhancement "is not the sole means by which a prior conviction . . . could impact the calculation of the defendant's [Guidelines sentencing range]." *Abdulaziz*, 998 F.3d at 528. "For example, that conviction could bear on the defendant's criminal history score," even if it does not contribute toward the career-offender enhancement. *Id.* Additionally, as stated above, sentencing courts have "broad discretion to take account of relevant considerations in setting the defendant's ultimate sentence." *Id.* In the end, similarities in purpose between ACCA and the Guidelines' career offender enhancement do not override the textual differences discussed above.

We must also address one final objection. Even if it is possible that the approach we adopt could result in different Guidelines ranges for two individuals who differ only as to the date of their sentencings, that possibility is a natural consequence of Congress's express directive to apply the Guidelines in effect at the time of sentencing. The same is also true of more general amendments to the Guidelines. Imagine, for example, that the

No. 22-51083

Guidelines included a list of "controlled substances." If that list were amended, courts would be required to apply the current version of the Guidelines—i.e., the list in effect at the time of a defendant's current sentencing—when determining whether the career offender enhancement applies. This scenario would also result in varying Guidelines ranges for similarly situated defendants sentenced on opposite sides of the amendment. Nonetheless, courts may vary a defendants' sentence upwards or downwards from the Guidelines range, within reason, to avoid unjust outcomes.

\*    \*    \*

For these reasons, we conclude that the CSA's definition of "controlled substance" in place at the time of sentencing for the instant offense is the proper comparison for determining whether Minor's predicate convictions constitute "controlled substance offenses" under the career-offender enhancement.[9] The district court therefore erred by applying the career-offender enhancement to Minor's Guidelines range.

## B. The district court's error was not harmless

Next, we consider whether the district court's error was harmless. "The improper calculation of the Guidelines range can rarely be shown not to affect the sentence imposed." *United States v. Juarez*, 812 F.3d 432, 439 (5th Cir. 2016) (per curiam) (brackets and quotation omitted). We recognize

---

[9] We conclude that the "realistic probability" test that requires a showing that the prior conviction could, in fact, be for the point in play does not apply here. We continue to apply that realistic probability test to state court convictions, but application to federal statutes should no longer apply as made clear by the Supreme Court and referenced by us. *See United States v. Kerstetter*, 82 F.4th 437, 440-41 (5th Cir. 2023) (per curiam) (distinguishing *United States v. Taylor*, 142 S. Ct. 2015 (2022) from that case because the former involved two federal statutes while the latter involved state cases).

"two ways by which the Government can show that a Guidelines error was harmless." *United States v. Reyna-Aragon*, 992 F.3d 381, 387 (5th Cir. 2021).

The first requires a showing that "the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* (quotation omitted). Here, although Minor's counsel advised the district court of the correct range, the government concedes that the district court "did not explicitly say that the 180-month sentence it imposed as a downward variance would be 'the same sentence' it would give whether the enhanced or unenhanced advisory guideline sentencing range applied." Put another way, the district court did not reference the correct range or discuss it at the time of pronouncing the sentence (for example, when saying the 262-to-327 range was "way too much" he did not say the 121-to-151 range was "too low"). We conclude the first way is not met.

We therefore look to the second way to see if the government demonstrated that a Guidelines error was harmless. The second way has two requirements: (1) "the Government must convincingly demonstrate that the district court would have imposed a sentence outside the properly calculated Guidelines range for the same reasons it provided at the sentencing hearing," and (2) "the Government must demonstrate that the sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation, but rather was based on independent factors." *Reyna-Aragon*, 992 F.3d at 388 (internal quotation marks and citation omitted). "The Government bears a heavy burden under this approach." *Id.* (internal quotation marks and citation omitted).

Although the government demonstrates that the district court considered several independent factors, it has failed to meet its "heavy burden" of demonstrating that the sentence imposed "was not influenced in

*any way* by the erroneous Guidelines calculation." *Id.* (emphasis added). It is true that the sentence imposed constitutes a downward variance from the district court's calculated Guidelines range, but "an incorrect Guidelines calculation will usually invalidate the sentence, even when the district court chose to impose a sentence outside the Guidelines range." *United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010). The district court's statement that the career-offender Guidelines range was "way too much," explains why it departed from *that* Guidelines range. But it does not establish with "requisite certainty . . . that the district court would have imposed precisely the same sentence" if it applied a Guidelines range that did not include the career-offender enhancement. *Id.* at 719. We therefore conclude that the district court's error was not harmless.[10]

## IV.   Conclusion

As a result of the above discussion, we must REVERSE and REMAND to the district court for resentencing.

---

[10] That said, of course, the district court can reapply the exact same sentence if, applying the proper Guidelines range, it still concludes that this sentence is proper as an above-Guidelines sentence.

No. 22-51083

STUART KYLE DUNCAN, *Circuit Judge*, dissenting:

Unlike my colleagues, I would follow the Fourth and Sixth Circuits and apply the career-offender enhancement in § 4B1.1 according to the time when the defendant was convicted of the predicate offense. *See United States v. Lewis*, 58 F.4th 764, 771 (3d Cir.), *cert. denied*, 144 S. Ct. 489 (2023); *United States v. Clark*, 46 F.4th 404, 411 (6th Cir. 2022); *see also United States v. Doran*, 978 F.3d 1337, 1338–1340 (8th Cir. 2020) (applying analogous enhancement in § 2K2.1(a)(2) according to time of conviction).

A time-of-conviction approach best fits § 4B1.1's text, which asks whether "the defendant has at least two *prior* felony *convictions* of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3) (emphases added). Say a defendant was convicted of a crime in 1972. The legislature changes the crime's definition in 1975. Well and good, but our defendant still "has" a "prior conviction" on his record. *See, e.g.*, *Clark*, 46 F.4th at 409 (§ 4B1.1's text "direct[s] the court's attention to events that occurred in the past").

A time-of-conviction approach also fits the purpose of § 4B1.1, which is to punish recidivism. *See Lewis*, 58 F.4th at 772 (§ 4B1.1 is a "recidivism enhancement[]") (quoting *Clark*, 46 F.4th at 409). Return to our defendant who broke the law in 1972. If the law changes in 1975, he doesn't get a gold star; he remains a law breaker. That is, if he commits a crime in 1980, he still "has" a "prior conviction" on his record. *See ibid.* ("[R]ecidivism enhancements . . . by nature concern a defendant's past conduct[.]") (quoting *Clark*, 46 F.4th at 409).

Finally, "a time-of-sentencing approach would yield absurd results." *Lewis*, 58 F.4th at 772. Here's one. Say two convicted defendants have the same predicate drug crime on their records. Congress changes the crime's definition, effective November 1. Defendant #1 is sentenced on October 31;

14

No. 22-51083

Defendant #2 is sentenced on November 2. A time-of-sentencing rule treats Defendant #1 as a career offender but not Defendant #2—merely because of the happenstance that Defendant #1 was sentenced on Halloween and Defendant #2 was sentenced on All Souls' Day. Trick or treat.

As the majority points out, the circuits are deeply split over whether the correct approach to applying the § 4B1.1 enhancement is time-of-conviction or time-of-sentencing. *See* Maj. at 6–7 (noting split between First, Second, and Ninth Circuits, on the one hand, and Fourth, Sixth, and Eighth Circuits, on the other). Our court has now picked a side. Hopefully, the Supreme Court will soon settle the matter.