# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-30192

———————

United States Court of Appeals
Fifth Circuit

**FILED**
April 27, 2026

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JULIUS AUGILLARD,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CR-90-1

———————————————————————

Before CLEMENT, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Julius Augillard appeals his 70-month sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He challenges his sentence on four grounds, including attacking the district court's use of the "realistic probability" test in determining whether his prior state conviction constituted a "controlled substance offense" for purposes of establishing his base offense level under § 2K2.1(a)(3) of the Sentencing

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Guidelines. Augillard also challenges the district court's application of the four-level enhancement under § 2K2.1(b)(6)(B) because Augillard "used or possessed any firearm or ammunition in connection with another felony offense." Because the district court properly applied the Sentencing Guidelines and did not clearly err in its factfinding, we AFFIRM in part. That said, because the district court abused its discretion in failing to pronounce a discretionary supervised release condition, we VACATE in part Augillard's judgment of the sentence and REMAND to the district court to amend the written judgment to conform to its oral pronouncement.

I

A grand jury charged Julius Augillard with two counts of possession of a firearm by a felon. The following facts underlie each count:

For Count One, police officers found Augillard in December 2023 asleep and trespassing in front of an apartment complex. A bag strapped across his chest contained a pistol, twelve rounds of ammunition, and small amounts of cocaine, fentanyl, heroin, and marijuana. Augillard had prior felony convictions for possessing crack cocaine and oxycodone, possessing cocaine with intent to distribute, and possessing a firearm as a convicted felon.

For Count Two, police officers observed Augillard in February 2023 smoking a marijuana cigarette on Bourbon Street during Mardi Gras. He attempted to flee, but police caught him, and a search of his person revealed a pistol, 28.27 grams of marijuana, and 10.46 grams of cocaine. He pleaded guilty to both charges without a plea agreement.

In his Presentence Report ("PSR"), the probation officer determined that Augillard's base offense level was 22 under § 2K2.1(a)(3) of the Sentencing Guidelines because Count Two "involved a semiautomatic firearm that is capable of accepting a large capacity magazine," and Augillard

committed the offenses following a conviction "for a crime of violence or a controlled substance." Four levels were added under § 2K2.1(b)(6)(B) because Augillard "used or possessed any firearm or ammunition in connection with another felony offense." Three levels were later deducted because Augillard accepted responsibility, thereby reducing his offense level to 23. Based on his criminal history category of IV, the advisory range of imprisonment was 70 to 87 months.

Augillard objected to the PSR, arguing that (1) § 2K2.1(a)(3) was not applicable to his base offense level because his 2011 Louisiana conviction for possession with intent to distribute cocaine does not constitute a "controlled substance offense" under the Sentencing Guidelines, and (2) he did not qualify for the four-level enhancement under § 2K2.1(b)(6)(B) because he was not engaged in a "drug trafficking offense in connection with his convictions." The probation officer refuted Augillard's objections and declined to modify the PSR. At sentencing, the district court heard arguments from the parties and overruled both of Augillard's objections. The district court sentenced Augillard to a term of 70 months of imprisonment and three years of supervised release. Augillard timely appealed.

## II

We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021). The government "bears the burden of showing, by a preponderance of the evidence, the facts necessary to support an elevated base offense level." *United States v. Luna-Gonzalez*, 34 F.4th 479, 480 (5th Cir. 2022).

### III

Augillard raises four issues on appeal. We address each in turn.

### A

The first issue is whether the district court erred in concluding that Augillard's previous cocaine addiction is a "controlled substance offense" under § 2K2.1(a)(3). Augillard argues that his 2011 Louisiana conviction for possession with intent to distribute cocaine was not a controlled substance offense under § 2K2.1(a)(3) because Louisiana's definition of a controlled substance was *broader* than the federal definition, so he did not need to rely on an actual case establishing that facial discrepancy. The government concedes that Augillard's Louisiana statute of conviction is facially overbroad when placed side by side with the federal definition because it does not exclude Ioflupane, but it defends the district court's application of the "realistic probability" test to require Augillard to cite a state court case showing that overbreadth.

The Sentencing Guidelines define a "controlled substance offense" as a "federal or state" offense "punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a *controlled substance* (or a counterfeit substance) or the possession of a *controlled substance* (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense." *United States v. Minor*, 121 F.4th 1085, 1088–89 (5th Cir. 2024) (quoting U.S.S.G. § 4B1.2(b)) (emphasis in original). Because the Guidelines do not define "controlled substance," we take cues from the Controlled Substance Act's ("CSA") definition of controlled substance. *See, e.g.*, *United States v. Gomez-Alvarez*, 781 F.3d 787, 792–94 (5th Cir. 2015) (linking the definition of controlled substance in Guideline § 2L1.2 to the definition of controlled substance provided by the CSA); *United States v. Arayatanon*,

980 F.3d 444, 453 n.8 (5th Cir. 2020) (same). After consulting the CSA's definition, we must then employ the categorical approach, which prescribes that a "prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision" if the "crime of conviction criminalizes a 'greater swath of conduct' than the elements of the relevant Guidelines offense." *Minor*, 121 F.4th at 1089 (quoting *Mathis v. United States*, 579 U.S. 500, 509 (2016)). Thus, to give effect to that approach, we must look to the "the statutory definition at issue" and compare the elements of that prior state offense to the current version of the CSA. *Id.* at 1090.

Here, the parties agreed at sentencing and on appeal that Augillard's 2011 Louisiana statute of conviction contained a broader definition of controlled substance than the CSA's definition because Louisiana's definition of cocaine did not expressly exclude Ioflupane—a cocaine-derivative substance that, by contrast, was expressly excluded from the CSA's definition. The district court tacitly embraced the parties' agreement that the definitions did not neatly match, but it nevertheless upheld the application of § 2K2.1(a)(3)'s enhanced base offense level of 22 because Augillard was unable to pinpoint a case in which Louisiana had prosecuted anyone for Ioflupane under the Louisiana statute of conviction.[1]

---

[1] The 2011 version of the Louisiana statute generally includes cocaine derivatives, so it is not clear from the text itself whether Ioflupane would have been exempted. *Compare* La. Stat. Ann. § 40:964, Schedule II(A)(4) (2011) ("Coca leaves, cocaine, ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation of coca leaves, cocaine or ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine."), *with* 21 C.F.R. § 1308.12(b)(4)(ii) (current) ("Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical

No. 25-30192

The basis for the district court's decision was premised on the "realistic probability" test, which derives from the Supreme Court's decision in *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183 (2007). There, the Court applied the categorical approach when reviewing whether the Ninth Circuit properly determined that an alien's prior California conviction for car theft did not constitute a generic theft offense under 8 U.S.C. § 1227(a)(2)(A) because the California statute included aiding and abetting. *Gonzalez*, 549 U.S. at 185–88. The Court held that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language." *Id.* at 193. Instead, the defendant was required to show "a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (emphasis added). To successfully make that showing, the defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Thus, the Court imposed an actual case requirement. *Id.*

The Fifth Circuit in *United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017) (en banc), picked up where *Duenas-Alvarez* left off and employed the categorical approach to assess whether a defendant's prior Texas conviction for unlawful possession of a firearm by a felon amounted to an aggravated felony for purposes of an enhancement under § 2L1.2(b)(1)(C) of the Sentencing Guidelines. *Id.* at 220–22. By its terms, the Texas statute's definition of felon was "plainly broader than its federal counterpart." *Id.* at

---

with any of these substances, *except that the substances shall not include . . . ioflupane*" (emphasis added)). Louisiana later modified the statute to clearly exempt Ioflupane from its definition of cocaine derivatives. LA. STAT. ANN. § 40:964, Schedule II(A)(4) (2016).

223. But Castillo-Rivera did not identify any case showing that Texas courts "*actually applied*" the Texas statute's definition of felon in a broader way. *Id.*

On review, the en banc court concluded that Castillo-Rivera failed to establish a realistic probability based on the actual case requirement. *Id.* at 222. Instead, his argument was premised on speculation that "numerous crimes *could* be considered felonies under the Texas statute . . . that are not felonies under federal law." *Id.* at 222. But such speculation invited the same "legal imagination to a state statute's language" that the Supreme Court squarely rejected in *Duenas-Alvarez. Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 183, 193). The dissent in *Castillo-Rivera* sought to dispense with the actual case requirement for facially overbroad statutes, but the en banc court held that such a position could not be squared with the Supreme Court's unequivocal directive in *Duenas-Alvarez* that a defendant must "at least" point to an actual case. *Id.* at 223 (quoting *Duenas-Alvarez*, 549 U.S. 183, 193). "In short, without supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary 'realistic probability.'" *Id.* (quotations omitted). Thus, the en banc court in *Castillo-Rivera* held that there was "no exception to the actual case requirement . . . where a court concludes a state statute is broader on its face." *Id.* at 223.

Augillard resurrects the same theory the en banc court rejected in *Castillo-Rivera*, but this time with new authority that supposedly compels a different outcome. To circumvent *Castillo-Rivera* and contend that the realistic probability test is no longer applicable to a facially overbroad statute, Augillard argues that the Supreme Court abrogated *Castillo-Rivera* in part in *United States v. Taylor*, 596 U.S. 845 (2022).

In *Taylor*, the Supreme Court reviewed whether Taylor's attempted Hobbs Act robbery offense constituted a crime of violence under 18 U.S.C. § 924(c)(3)(A). 596 U.S. at 848. After applying the categorical approach, the

Court concluded that attempted Hobbs Act robbery did not satisfy the definition of a crime of violence. *Id.* at 850–52, 858–59. Critically, the *Taylor* Court declined to extend the realistic probability test from *Duenas-Alvarez* for two reasons. First, unlike *Duenas-Alvarez*, there were no federalism concerns because that case concerned an immigration statute that "required a federal court to make a judgment about the meaning of a state statute," whereas the comparison of a federal statutes in *Taylor* did not. *Id.* at 859. Second, unlike *Duenas-Alvarez*, which contained elements of state and federal offenses that "clearly overlapped," there was simply "no overlap" between the Hobbs Act and the elements under § 924(c)(3)(A). *Id.* For these reasons, the Court held, the realistic probability test was inapplicable. *See id.*

Augillard seizes on the second reason articulated in *Taylor* and presses that the realistic probability test applies only when the two statutes at issue "clearly overlap" in a relevant way. He also flags another Supreme Court decision, *Brown v. United States*, 602 U.S. 101 (2024), that he believes "leaves no doubt" that *Castillo-Rivera* is abrogated.

The government pushes back against Augillard's interpretation, arguing that our decision in *Minor*, which was issued after *Taylor*, expressly noted that we "continue to apply that realistic probability test to state court convictions." *Minor*, 121 F.4th at 1093 n.9. Augillard construes that statement as dictum and therefore not binding on this court. *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (explaining that "the binding force of earlier opinions" does not extend to . . . dictum). The government, however, presses that *Minor*'s footnote observation is binding after *Taylor*.

Without untangling that knot, we conclude today that neither *Taylor* nor *Brown* abrogated *Castillo-Rivera*. We address each case in turn, but we

No. 25-30192

embrace the sound reasoning laid forth by *United States v. Kerstetter*, No. 22-10253, 2025 WL 1079071, at *4 (5th Cir. April 10, 2025) (per curiam).[2]

By its own terms, *Taylor* did not overrule *Duenas-Alvarez*. The Supreme Court simply declined to extend the realistic probability test in that case because there were no federalism concerns and no overlapping elements. 596 U.S. at 859. But that is a far cry from overturning or disavowing the realistic probability test. So, if *Duenas-Alvarez* remains good law, then so does *Castillo-Rivera*, which applies the actual case requirement. For this reason alone, we conclude that *Taylor* did not abrogate *Castillo-Rivera*.

Moreover, in the wake of *Taylor*, our court has routinely applied the realistic probability test in published decisions, even though those cases do not explicitly mention *Taylor* by name. *See, e.g.*, *United States v. Russell,* 136 F.4th 606, 612 (5th Cir. 2025), *cert. denied*, 2025 WL 2824431 (U.S. Oct. 6, 2025) (No. 25-5334) (applying the realistic probability test without mentioning *Taylor* to determine whether a defendant's prior Tennessee conviction constituted a crime of violence for purposes of § 2K2.1(a)(1)); *Ponce v. Garland*, 70 F.4th 296 (5th Cir. 2023) (applying the realistic probability test without mentioning *Taylor* in the immigration context); *Alejos-Perez v. Garland*, 93 F.4th 800, 805 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 591 (2024) (same); *Khan v. Garland*, 69 F.4th 265, 269–70 (5th Cir. 2023) (same).[3] Silence could suggest those cases were unaware of *Taylor*, but that

---

[2] Unpublished decisions issued in or after 1996 "are not precedent" except in limited circumstances, 5TH CIR. R. 47.5.4, but they "may be persuasive authority," *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

[3] And those are just the published cases. We have unpublished ones applying the realistic probability test after *Taylor*, too. *See, e.g.*, *Kerstetter*, 2025 WL 1079071, at *4; *United States v. Edmond*, No. 24-30255, 2025 WL 2017287, at *2 (5th Cir. July 18, 2025); *United States v. Porterie*, No. 22-30457, 2025 WL 457999, at *4 (5th Cir. Feb. 11, 2025), *cert. denied*, 2025 WL 2824084 (U.S. Oct. 6, 2025) (No. 24-7460).

seems highly implausible. Instead, our silence reflects that these cases, unlike *Taylor*, involved comparing a *state* statute of conviction with *federal* law. Thus, *Taylor* was not mentioned because it was simply inapplicable.

*Brown* does not rescue Augillard's position, either. There, the Supreme Court held that "a prior state drug conviction constitutes an [Armed Career Criminal Act] predicate if the drugs on the federal or state schedules matched when the state drug offense was committed." 602 U.S. at 119. But nowhere in that opinion does the Court mention *Duenas-Alvarez* or the realistic probability test. Thus, we are hard-pressed to conclude *Brown* abrogated *Castillo-Rivera*. *See United States Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) ("[A]n intervening change in the law must be *unequivocal*, not a mere 'hint' of how the Court might rule in the future." (emphasis added)).

Much circuit authority exists for the proposition that the realistic probability test is alive and well in the aftermath of *Taylor* and *Brown*. By contrast, there is no decision of this court holding that *Castillo-Rivera* has been abrogated. Without "an intervening change in the law, one panel of our court may not overturn another panel's decision." *United States v. Clark*, 49 F.4th 889, 892 (5th Cir. 2022). We conclude that there has been no such change in the law, so we decline Augillard's invitation to hold otherwise.

Accordingly, we hold that the district court properly applied the realistic probability test to Augillard's 2011 Louisiana conviction for possession with intent to distribute cocaine. Because Augillard failed to locate a Louisiana case in which a defendant was prosecuted for possession of Ioflupane, he failed to satisfy the realistic probability test. *Castillo-Rivera*, 853 F.3d at 222. Thus, the district court did not err in determining that Augillard's 2011 Louisiana conviction was a controlled substance offense.

B

The second issue on appeal is whether the district court clearly erred in finding that Augillard possessed a firearm in connection with another felony for purposes of the four-level enhancement under § 2K2.1(b)(6)(B). Augillard argues that the district court clearly erred because its decision was premised on "pure speculation and assumptions," "not reliable, specific evidence" that he "was 'engaged in more than just simple possession' when he possessed marijuana and cocaine" during Mardi Gras. The government defends the four-level enhancement, arguing that the district court did not clearly err in finding that Augillard intended to distribute the individual bags of contraband.

"Due process requires that sentencing facts be established by a preponderance of the evidence." *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013) (cleaned up). We "may only affirm the district court's application of if it is 'plausible' in light of the record as a whole" that Augillard's "possession of the firearm 'facilitated, or had the potential of facilitating,' the drug possession." *United States v. Jeffries*, 587 F.3d 690, 693 (5th Cir. 2009). The possession of a firearm and contraband in proximity supports the enhancement when the other felony offense is a drug *trafficking* crime. *See* § 2K2.1, cmt. n.14(B)(ii) (explaining that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia"); *see also Jeffries*, 587 F.3d at 692 (noting that the enhancement "automatically applies" in that situation). By contrast, the mere possession of a firearm and contraband in proximity—alone—does not support that same presumption when the other felony offense is a drug *possession* crime. *Id.* at 692–93. Additional facts must be evinced to show the gun "emboldened" Augillard to engage in drug possession or "served to protect" the drugs. *Id.* at 694.

Here, the district court correctly found that there was "sufficient reason to believe that" Augillard "was engaged or intended to engage in more than just simple possession." Unlike *Jeffries*, where we vacated a sentence when the defendant was arrested with a gun and a single rock of crack cocaine in his car as evidence "too sparse" to support the enhancement under § 2K2.1(b)(6)(B), the record shows more specific facts in this case. *Jeffries*, 587 F.3d at 695. In February 2023, Augillard was arrested on Bourbon Street during the Mardi Gras festivities, where he possessed a .40 caliber firearm loaded with nineteen rounds, three small baggies containing a total of 28.7 grams of marijuana, and one small baggie containing 10.46 grams of cocaine. Later that year, he was arrested again with drugs—including cocaine, heroin, and fentanyl in "small plastic baggies"—and a loaded 9mm firearm. The sheer volume of drugs Augillard possessed during Mardi Gras, accompanied with the distinct packaging for each drug, reasonably supports the factual finding that Augillard's possession of the *loaded* firearms had the potential to facilitate his distribution of the drugs. *Jeffries*, 587 F.3d at 693. Unlike *Jeffries*, which involved a "small quantity of drugs and a gun in the same vehicle," *id.* at 695, Augillard possessed a much larger quantity of packaged drugs on Bourbon Street during one of the most celebrated festivals in the world while in possession of a loaded firearm.

Reviewed cumulatively, the facts in this case reasonably support the district court's factual finding that Augillard's possession of a gun "facilitated, or had the potential of facilitating," the drug possession. Thus, because the district court did not clearly err in its factfinding, we AFFIRM the district court's application of § 2K2.1(b)(6)(B) to Augillard's sentence.

C

The third issue is whether the district court's written judgment conflicts with its oral pronouncement. Augillard argues that the drug

treatment condition in the written judgment conflicts with the district court's oral pronouncement. The PSR recommended a series of "special" conditions of supervision, including requiring Augillard to "undergo random urinalysis." That condition also stated: "If the defendant tests positive for the use of illegal narcotics, [he] may be required to participate in an approved outpatient treatment program for substance abuse." At sentencing, the district court adopted that condition, and stated,

> Based on the defendant's history of substance abuse, the defendant shall undergo random urinalysis. If the defendant tests positive for the use of illegal narcotics, the defendant may be required to participate in an approved outpatient treatment program for substance abuse and abide by all supplemental conditions of treatment.

The written judgment took it a step further. It required, along with the random urinalysis testing, that Augillard "shall participate in an approved outpatient treatment program for drug and/or alcohol and abide by all supplemental conditions of treatment." Augillard argues that this "broadened" the condition as pronounced, and such a conflict requires the written judgment to be revised. The government concedes this point.

Because this condition is not mandatory under 18 U.S.C. § 3538(d), the district court was required to pronounce it at sentencing. *See United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020) (en banc). It did not. And because Augillard did not have an opportunity to object before the district court to the new terms added in the written judgment, "we review for abuse of discretion." *United States v. Martinez*, 47 F.4th 364, 366 (5th Cir. 2022).

We agree with the parties that a conflict exists because the written judgment in this case "broadens the restrictions or requirements of supervised release" from the oral pronouncement. *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006). For that reason, the district court abused

its discretion in failing to pronounce that condition, *id.*, and the "oral pronouncement controls," *United States v. Nelson*, 114 F.4th 478, 481 (5th Cir. 2024) (per curiam), *cert. denied*, 114 F.4th 478 (U.S. Nov. 4, 2024). When a discretionary condition, such as the special release one in this case, "*conflicts* with the sentence as orally pronounced," it "must be excised on remand." *United States v. Currier*, 160 F.4th 656, 657 (5th Cir. 2025) (emphasis in original). That bright-line remedial rule from *Currier* requires— "at a minimum"—that the conflicting discretionary condition in the written judgment here "be erased by the district court on remand." *Id.* at 663.

Accordingly, Augillard's judgment of sentence is VACATED in part and REMANDED to the district court to amend the written judgment to conform to its oral pronouncement.

## D

The fourth and final issue is whether 18 U.S.C. § 922(g)(1) violates the Second Amendment, either facially or as applied to Augillard. That issue, as the parties properly concede, is foreclosed by our circuit precedent. *E.g.*, *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) (facial challenge); *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) (as-applied challenge).

## IV

For these reasons, we AFFIRM the district court's conclusion that Augillard's previous cocaine addiction is a "controlled substance offense" under § 2K2.1(a)(3) as well as its factual finding that Augillard possessed a firearm in connection with another felony under § 2K2.1(b)(6)(B). But because the district court's written judgment conflicts with its oral pronouncement, we VACATE in part Augillard's judgment of sentence and REMAND to the district court to amend the written judgment accordingly.